OPINION
{¶ 1} Sphere Investments Ltd. ("Sphere") appeals from a judgment of the Montgomery County Court of Common Pleas, which affirmed the decision of the Washington Township Board of Zoning Appeals ("BZA") to deny Sphere's application to construct a parking lot on two empty lots incorporated into the McEwen Square Center.
 {¶ 2} In 1984, Lots 5, 6, and 7 of the Meadows Professional Center were zoned Special Use and, as required pursuant to that classification, a specific plan was approved which called for two buildings on the three lots. This particular building plan was never implemented. In 1994, Lot 7 was rezoned to Planned Development for the expansion of an adjoining child care center, and a specific site plan was approved for the construction of a playground. This change ensured that the Special Use site plan developed in 1984 could never be implemented.
 {¶ 3} In 2003, Sphere recorded a 6.2133 acre plat composed of six smaller lots, including lots 5 and 6, which became known as the McEwen Square Center. Two strip center-type buildings existed on the plat, along with an existing parking lot. Lots 5 and 6 remained vacant. When a large restaurant chain expressed interest in leasing space in one of the strip malls, Sphere sought to use lots 5 and 6 for additional parking. The filing of the plat was aimed at the requirement in Article 13, Section 3, Paragraph B of the Zoning Resolution that any parking area be on the same lot as the principal building. The additional parking lot was designed to accommodate the 250-seat capacity of the restaurant and to satisfy the township's zoning regulations, which would have required more parking than then existed if the restaurant were to be located in the strip mall.
 {¶ 4} The Zoning Coordinator refused Sphere's application for a permit to construct a parking lot on the basis that the former Lots 5 and 6 were zoned Special Use and, therefore, the use of the lots was restricted to the specific site plan that had previously been approved. The Coordinator believed that a zoning change was the proper mechanism by which to seek a different use of the property.[1]
 {¶ 5} Sphere filed an application with the township to change the zoning classification of the portion of McEwen Square Center encompassing Lots 5 and 6, but it withdrew that application before it was reviewed by the Board of Trustees, apparently believing that the change would be denied.
 {¶ 6} On November 7, 2003, Washington Township's Zoning Coordinator denied Sphere's request for a zoning certificate to construct an additional parking area for the McEwen Square Center on Lots 5 and 6. Sphere appealed to the BZA, which denied its appeal after a hearing. Sphere appealed to the court of common pleas, which held a hearing at which additional evidence and exhibits were offered. The court then affirmed the decision of the BZA.
 {¶ 7} Sphere appeals to this court, raising one assignment of error.
 {¶ 8} "The lower court erred in finding that the Washington Township Zoning resolution prohibits a parking lot from being built on land zoned for a special use office/warehouse complex which has not been built and cannot be built and in denying appellant's appeal."
 {¶ 9} Sphere contends that constructing a parking lot on Lots 5 and 6 was permissible pursuant to Article 12, Section 3, Paragraph B of the Township's General Regulations, which relates to off-street parking. Sphere also argues that the Township, in effect, left Lots 5 and 6 "unzoned" when it rezoned Lot 7, making it impossible for the previously approved Special Use site plan to be implemented. Washington Township claims that the replatting of the six lots into one parcel did not change the zoning classification of each lot and that the Special Use classification of Lots 5 and 6 did not permit the construction of a parking lot.
 {¶ 10} When considering an administrative appeal, a court of common pleas must weigh the evidence in the record to ascertain whether there exists a preponderance of reliable, probative, and substantial evidence to support the administrative agency's decision. R.C. 2506.04; Dudukovichv. Lorain Metro. Housing Auth. (1979), 58 Ohio St.2d 202, 207,389 N.E.2d 1113; John P. Raisch, Inc. v. Board of Zoning Appeals (June 18, 1999), Montgomery App. No. 17561. Consistent with its findings, the court may affirm, reverse, vacate, or modify the decision, or remand the matter to the body appealed from with instructions to enter a decision consistent with the findings or opinion of the court. R.C. 2506.04. The common pleas court "considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. Youngstown Bd.of Zoning Appeals (2000), 90 Ohio St.3d 142, 147, 2000-Ohio-493,735 N.E.2d 433.
 {¶ 11} The standard of review to be applied by an appellate court in a R.C. 2506.04 appeal is "more limited in scope." Id., citing Kisil v.Sandusky (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848. R.C. 2506.04
grants a more limited power to the court of appeals, which does not include the same extensive power to weigh the evidence as is granted to the common pleas court. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court." Henley,90 Ohio St.3d at 147. An appellate court reviews the judgment of the common pleas court only on questions of law. Kisil, 12 Ohio St.3d at 34.
 {¶ 12} Here, the trial court found that Sphere's proposed use of the property had been properly denied because it did not match the specific site plan. There is no dispute that Lots 5 and 6 were zoned Special Use and that a specific site plan had been approved for those lots. The BZA took the position that the specific site plan restricted what could be built on the property until the zoning was changed. (Because no Special Use categories were permitted after 1985, the BZA required rezoning rather than the presentation of a different specific site plan.) The trial court agreed, reasoning that to allow Sphere to use the property differently based on the fact that it had created a "`mega' lot [of contiguous parcels], and then build on that lot inconsistent with the original zoning restrictions" would thwart the original zoning scheme.
 {¶ 13} The trial court also rejected Sphere's argument that the parking regulations permitted the construction of a parking lot on Lots 5 and 6. The court analyzed the issue in terms of distinct legal requirements and use classifications, as follows:
 {¶ 14} "The parking provision, which falls under the Article titled `General Regulations,' is a legal requirement. By constructing a parking lot on the same lot as the principal building, [Sphere] would be complying with the legal requirement for parking location. Since the fulfillment of the remaining legal requirements is not in dispute, the Zoning Administrator has the duty to grant the certificate only if the proposed use of Lots 5 and 6 falls within the use classification applicable to Lots 5 and 6.
 {¶ 15} "[Sphere] argues that because the parking provision allows [it] to build a parking lot on Lots 5 and 6 and the special use provision does not, the conflicting clauses create an ambiguity. Therefore, [Sphere] adds, resolving the ambiguity in favor of the property owner, the parking provision would take precedence over the special use provision. [Sphere's] argument is not well-taken. As stated above, the parking provision is a legal requirement that must be met in addition to the special use provision. The fact that an applicant can meet the first requirement but not the second does not create an ambiguity. To give one precedence over the other * * * would be contrary to the law."
 {¶ 16} In sum, the trial court found the BZA's decision to be supported by the preponderance of reliable, probative, and substantial evidence. It rejected Sphere's argument that the general regulations relating to parking permitted the construction of a parking lot in an area for which a different, specific plan had been approved pursuant to a Special Use zoning classification. It also rejected the argument that Lots 5 and 6 automatically reverted to their previous zoning classification as a result of the change in zoning of Lot 7. The court noted that zoning regulations provide a "Procedure for Change" and that it was not unreasonable for the BZA to take the position that Lots 5 and 6 remained Special Use until the procedure for change was followed.
 {¶ 17} We conclude that the trial court did not err in its assessment that the BZA decision was supported by the preponderance of reliable, probative, and substantial evidence, and that it acted properly in rejecting Sphere's arguments. It appears that the proper avenue is for Sphere to seek a change in zoning, perhaps to one of the various types of Business Districts, each of which permit restaurants and provide for parking in accordance with Article 13. If that request is denied, Sphere's remedy will be to pursue an appeal from that decision.
 {¶ 18} The assignment of error is overruled.
 {¶ 19} The judgment of the trial court will be affirmed.
Brogan, P.J. and Donovan, J., concur.
[1] Washington Township had abandoned the Special Use classification after 1985.