**SHIELDS et al., Appellants,**

v.

**CITY OF ENGLEWOOD et al., Appellees.**

[Cite as *Shields v. Englewood,* 172 Ohio App.3d 620, 2007-Ohio-3165.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21733.

Decided June 22, 2007.

Ann Requarth and Joyce Deitering, for appellant William Shields.

Konrad Kuczak, for appellants Joyce Deitering and Ann Requarth.

Dwight A. Washington, Michael P. McNamee, and Gregory B. O'Connor, for appellees.

WALTERS, Judge.

{¶ 1} Appellants, William Shields, Joyce Deitering, and Ann Requarth, appeal from the judgment of the trial court in favor of defendant-appellees, the city of Englewood et al., which upheld the decision of the Englewood Personnel Advisory and Appeals Board to discharge Shields from classified civil service employment and awarded them attorney fees as a sanction for the frivolous conduct of Shields's attorneys.

{¶ 2} Shields sets forth five assignments of error claiming that the trial court erred in considering the administrative record supplied by Englewood, that the trial court committed plain error in conducting a hearing for the presentation of additional evidence, that the trial court erred in prohibiting Shields from presenting evidence, that the trial court's decision is contrary to law, and that it is contrary to the manifest weight of the evidence.

{¶ 3} Shields's trial counsel, Joyce Deitering and Ann Requarth, set forth five additional assignments of error asserting that the trial court erred in ordering sanctions without providing them with the opportunity to conduct discovery and without conducting a hearing, that the award of attorney fees included services that were not incurred as any result of conduct by them, that the award is contrary to law as to Deitering, and that the award is contrary to the manifest weight of the evidence.

{¶ 4} Because we determine that there was no error in the trial court's procedure in conducting either the administrative-appeal hearing or the hearing on the motion for sanctions, that neither judgment is contrary to law, and that we have no ability to review the weight of the evidence, we affirm the judgments on appeal.

{¶ 5} On December 10, 2003, Shields was discharged from his employment with Englewood after an investigation into an incident in which the city manager of Englewood observed the leaf vacuum that Shields was operating, which was illegally parked at the National City Bank Branch on Beckenham Road during work hours.

{¶ 6} The Englewood Personnel Advisory and Appeals Board ("EPAAB"), after an investigation and hearing of the matter, found that Shields had violated the Rules of Merit Employment by being untruthful and that because of previous violations and progressive discipline, his employment should be terminated.

{¶ 7} Shields appealed this decision to the Montgomery County Common Pleas Court. After hearing, but before a decision was rendered, Shields's counsel filed a notice with the court requesting the court to defer ruling until Shields could present newly discovered evidence. At a subsequent telephone conference, Shields's attorney Requarth told the court that a witness whom Shields had subpoenaed to the prior hearing, another employee of Englewood, failed to appear because the Englewood city manager had instructed the witness to disobey the subpoena. As a result of this assertion, the trial court scheduled a hearing to take additional evidence.

{¶ 8} Immediately prior to that hearing to take additional evidence, attorneys Requarth and Deitering admitted that they had misrepresented the reason for the witnesses's failure to attend the prior hearing, conceding that his failure to appear had been due to their failure to serve the subpoena at his proper address. Englewood moved for sanctions for the frivolous conduct of these attorneys.

{¶ 9} The trial court entered judgment granting the motion for sanctions, pursuant to R.C. 2323.51, and on the same date, in a separate judgment entry, sustained the decision of the EPAAB to terminate Shields's employment. After a subsequent hearing, the trial court awarded $4,392.50 in attorney fees to Englewood as a sanction for the frivolous conduct of Requarth and Deitering.

{¶ 10} Appellants have presented ten assignments of error for our review.

### First Assignment of Error

{¶ 11} "The trial court committed prejudicial error by considering the administrative record supplied by the City of Englewood in arriving at its decision to uphold the Appellee Board."

## Second Assignment of Error

{¶ 12} "The trial court committed plain error in conducting a hearing for the presentation of 'additional evidence.' "

{¶ 13} R.C. 2506.03 provides the procedure that is to be employed by a trial court in conducting an appeal of an administrative decision:

{¶ 14} "The hearing of an appeal taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code shall proceed as in the trial of a civil action, but the court shall be confined to the transcript filed under section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of [five specific exceptions applies.] * * * If any circumstance described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and additional evidence as may be introduced by any party. At the hearing, any party may call, as if on cross-examination, any witness who previously gave testimony in opposition to that party."

{¶ 15} In his first assignment of error, Shields claims that none of the testimony at the administrative hearing was sworn testimony and that he objected to this procedure at two times during the proceeding. If true, this would constitute an exception under R.C. 2506.03(A)(3) that would permit the court to hear additional evidence. He then argues that as a result, the trial court should not have considered the transcript of the administrative proceeding in any fashion. Englewood suggests that a careful review of the transcript will reveal that neither of Shields's attorneys ever objected to unsworn testimony.

{¶ 16} The record on appeal does not reflect that any objection was made to unsworn testimony. The objections that were made were directed generally to the procedure for the hearing employed by the EPAAB. Shields's counsel objected to the time limits placed upon his presentation of evidence and to the board's refusal to issue subpoenas for witnesses to testify on behalf of Shields. In fact, the only witness who actually testified at the hearing was Shields himself. And the transcript does not reflect that Shields requested to be sworn prior to testifying. It is well accepted that the failure to administer an oath to witnesses in an administrative proceedings is not fatal and that any objection is waived if it is not timely asserted. "In the event that there is no objection to the admission of unsworn testimony at an administrative hearing, the error of allowing this evidence is waived * * *." *Zurow v. Cleveland* (1978), 61 Ohio App.2d 14, 24, 15 O.O.3d 21, 399 N.E.2d 92. The trial court should then consider the unsworn testimony as though it were given under oath. Id. at 24, 15 O.O.3d 21, 399 N.E.2d 92. See, also, *Neague v. Worthington City School Dist.* (1997), 122 Ohio App.3d 433, 702 N.E.2d 107.

{¶ 17} In his second assignment of error, Shields, conceding that he did not object in the trial court, argues that the taking of additional evidence constituted plain error. He bootstraps this argument to his argument in the first assignment of error, asserting that the result that should have occurred was that there would have been no evidence before the trial court, which thereby would have necessitated a reversal of the administrative decision.

{¶ 18} Addressing the applicability of the plain-error doctrine to appeals of civil cases, the Supreme Court of Ohio in *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 122–123, 679 N.E.2d 1099, stated:

{¶ 19} "[I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."

{¶ 20} Even assuming, arguendo, that the trial court's decision was in error, the decision to allow the taking of additional evidence could not reasonably be characterized as seriously affecting the basic fairness, integrity, or public reputation of the judicial process. It would not rise to the level required for the application of the plain-error doctrine.

{¶ 21} Because we do not have a transcript of the January 13, 2005 hearing which the additional evidence was taken, we cannot review whether Shields objected in any fashion or whether he took advantage of the opportunity to call and examine witnesses on his own behalf. If he did so, the invited-error doctrine would also apply. See *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590.

{¶ 22} While Shields has filed videotapes and DVDs of the proceedings herein, he has not provided typed or printed portions of those transcripts, as required by App.R. 9(A). Therefore, the lack of a transcript precludes us from reviewing Shields's specific arguments. App.R. 9(A) provides, "When the transcript of proceedings is in the videotape medium, counsel shall type or print those portions of such transcript necessary for the court to determine the questions presented, certify their accuracy, and append such copy of the portions of the transcripts to their briefs." Without a transcript, we must presume the regularity of the trial court's proceedings, and Shields's arguments necessarily fail. *Craig v. Montgomery Cty. Bd. of Commrs.*, Montgomery App. No. 21056, 2006-Ohio-1132, 2006 WL 574398, ¶ 12–13; *State v. Morris*, Montgomery App. No. 21125, 2006-Ohio-2129, 2006 WL 1132755, ¶ 2.

{¶ 23} In reviewing the record of the administrative proceedings, we note that there are, on the face of that record, deficiencies that would trigger the

provisions of R.C. 2506.03(A)(2) and (4), which would have allowed the trial court to have conducted a hearing to allow additional evidence. We also note that the trial court's judgment entry of October 4, 2004, properly found, upon Shields's motion to supplement the record, that because "Shields was not given the opportunity to 'offer and examine witnesses' nor a full opportunity to '[o]ffer evidence to refute evidence and testimony offered in opposition to his position * * * ' that the court would 'hear the appeal on the transcript and such additional evidence as may be introduced by any party.' "

{¶ 24} Because R.C. 2506.03 provides that "the court shall hear the appeal upon the transcript and additional evidence as may be introduced by any party," Shields has not demonstrated any error on the part of the trial court. Further, even if it was error, this is not an issue that seriously affects the basic fairness, integrity, or public reputation of the judicial process, and thereby challenges the legitimacy of the underlying judicial process. Accordingly, we find that the first and second assignments of error are not well taken and that they should be overruled.

## Third Assignment of Error

{¶ 25} "The judgment of the trial court is contrary to law in that Appellant was unconstitutionally deprived of his employment."

## Fifth Assignment of Error

{¶ 26} "The order discharging Appellant is not supported by reliable, substantial, and probative evidence and the judgment of the trial court is thus contrary to law."

{¶ 27} Regardless of how Shields has denominated these assignments of error, his argument as to both is that the trial court's decision is contrary to the weight of the evidence.

{¶ 28} When reviewing an administrative appeal pursuant to R.C. 2506.04, the trial court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *Sphere Investments Ltd. v. Washington Twp. Bd. of Zoning Appeals*, Montgomery App. No. 20733, 2005-Ohio-2518, 2005 WL 1208118, at ¶ 10. The trial court may "affirm, reverse, vacate, or modify the order * * * or remand the matter to the body appealed from with instructions to enter an order * * * consistent with the findings or opinion of the court." R.C. 2506.04.

■ {¶ 29} However, the standard of review to be applied by an appellate court in an R.C. 2506.04 appeal is much " 'more limited in scope.' " *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433, quoting *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. In *Henley*, the Ohio Supreme Court explained:

{¶ 30} " '[R.C. 2506.04] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable, and probative evidence," as is granted to the common pleas court.' [*Kisil*, 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848], at fn. 4. 'It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.' " *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

{¶ 31} As explained by the Ohio Supreme Court in *Henley*, a question of law is "[a]n issue to be decided by the judge, concerning the application or interpretation of the law." Id., 90 Ohio St.3d at 148, 735 N.E.2d 433, citing Black's Law Dictionary (7 Ed.1999) 1260.

{¶ 32} In addition to Shields's arguments that the evidence does not support the decision of the trial court or the EPAAB, he also suggests that at some time during the proceedings Englewood offered an "altered rationalization" for the discipline of Shields. Shields attempts to hang an argument on a distinction between whether he was allegedly in front of the National City Bank on the date in question to clean or to check a catch basin. However, this appears to be a distinction without a difference. The bottom line is that both factfinders determined that Shields had violated Standard VII of the Rules of Merit Employment of Englewood, which pertains to "providing untruthful information" as to the events occurring transpiring at the National City Bank on December 5, 2003. This does not constitute an "altered rationalization," and there is nothing from the record before us that would support a finding that Shields was unconstitutionally deprived of his employment.

{¶ 33} This court does not have the ability to review any findings of fact or to weigh any of the evidence. We may only review questions of law upon which the trial court ruled. Accordingly, we find the third and fifth assignments of error to be without merit and overrule them.

### Fourth Assignment of Error

{¶ 34} "The trial court committed prejudicial error by prohibiting Appellant from presenting evidence which would have demonstrated that the altered rationalization for his discharge was not reliable, probative and substantial."

{¶ 35} For several reasons, we also find the fourth assignment of error to be meritless. Shields argues here that the trial court repeatedly prohibited Shields from testifying as to certain matters.

{¶ 36} First, because Shields has not provided this court with typed or printed portions of those transcripts from the January 13, 2005 hearing, as required by App.R. 9(A), we are precluded from reviewing Shields's specific arguments in this respect, and we must presume the regularity of the proceedings.

{¶ 37} Second, the quoted portions of the testimony that Shields now complains of do not reflect that any objections were made to the trial court's supposed limitations on Shields's testimony. Evidentiary rulings that are not objected to at trial are waived for purposes of appeal unless the appellant demonstrates plain error. *State v. Daoud*, Montgomery App. No. 19213, 2003-Ohio-676, 2003 WL 327997.

{¶ 38} Finally, Shields's argument on this assignment resolves into a discussion of the weight of the evidence and whether there was sufficient evidence to demonstrate that Shields was at the location in question in order to clean or to check a catch basin. We have already determined that this was not an issue in the trial court, and we have also pointed out that we cannot review the findings of fact made by the trial court.

{¶ 39} Shields's fourth assignment of error is overruled.

### Sixth Assignment of Error

{¶ 40} "The trial court committed prejudicial error by ordering sanctions without conducting a hearing in conformity with ORC § 2323.51(B)(2)(c)."

{¶ 41} In response to Englewood's motion for sanctions, the trial court on June 30, 2005, ordered the following:

{¶ 42} "[T]he Motion for Sanctions filed herein by the Defendant on June 21, 2005 will be submitted for decision on July 15, 2005 as of 1:00 p.m. No oral hearing will be conducted unless requested by any party and approved by the Court in which event a definite date and time will be set.

{¶ 43} "All memoranda and/or affidavits either in support of or in opposition to the motion must be filed by July 07, 2005, with Replies due on or before July 14, 2005, with a copy delivered to the Court not later than twenty four hours prior to

the aforesaid date and time for submission unless the Court, upon oral or written request, grants an extension."

{¶ 44} The record does not reflect, and Shields does not argue, that thereafter any request was made for an evidentiary hearing on the issue of whether attorneys Requarth and Deitering engaged in frivolous conduct.

{¶ 45} As to whether an evidentiary hearing must be conducted, we agree with the analysis contained in *McKinney v. Aultman Hosp.* (Apr. 27, 1992), Stark App. No. CA 8603, 1992 WL 100451, which states as follows:

{¶ 46} "[T]he subject statute [R.C. 2323.51] does not mandate that a hearing be held but does require that if attorney fees are to be ultimately awarded, then a hearing indeed *must have been conducted* in accord with subsections (a), (b) and (c) of R.C. 2323.51(B)(2).

{¶ 47} "Admittedly the statute contains inscrutable language creating conflicting results. However, the Court of Appeals of Summit County has effectively 'translated' (at least in our eyes) it in the following unambiguous format:

{¶ 48} " 'When a frivolous conduct motion is filed, pursuant to R.C. 2323.51, the party against whom the motion is directed should be given opportunity to respond, as with any motion. See Civ.R. 8; *Ohio Furniture Co. v. Mindala* (1986), 22 Ohio St.3d 99, 100 [22 OBR 133, 488 N.E.2d 881], footnote 4. *If the motion has merit,* whether the party against whom it is directed responds or not, then the trial court must set a hearing as provided in R.C. 2323.51(B)(2)(a). Such a hearing date provides an opportunity for each party to submit briefs and evidentiary materials which may support their respective positions. The hearing is not required to be an oral hearing. Whether the hearing is to be conducted on the submitted matters or orally remains discretionary with the trial court.' " (Emphasis sic.) *McKinney,* supra, quoting *In re Annexation of 18.23 Acres* (Jan. 11, 1989), Summit App. No. 13669, 1989 WL 1643 (George, J., concurring).

{¶ 49} In the instant case, where the alleged conduct occurred in the trial judge's presence, where counsel had the opportunity to respond to the motion with briefs and by the submission of affidavits or other evidentiary material, and where counsel, after being given the opportunity, failed to request an evidentiary hearing, and where the trial court conducted an oral hearing for the purpose of further argument, we believe it is safe to say that the trial court could proceed to judgment on the issue of whether there was a prima facie showing of frivolous conduct warranting a subsequent hearing on the sanction to be imposed.

{¶ 50} We adopt and apply the reasoning of the authorities cited above. R.C. 2323.51 does not mandate that an evidentiary hearing always be conducted to determine whether a particular action involves frivolous conduct, but it does require that if attorney fees are to be ultimately awarded, then a hearing indeed

must be held in accordance with subsections (a), (b), and (c) of R.C. 2323.51(B)(2). The sixth assignment of error is overruled.

## Seventh Assignment of Error

{¶ 51} "The fundamental fact found by the trial court used to justify the imposition of sanctions is unsupported by the evidence and is at odds with the trial court's own stated recollection of the events."

## Eighth Assignment of Error

{¶ 52} "The trial court committed prejudicial error by imposing sanctions without providing Ms. Deitering and Ms. Requarth a reasonable opportunity for discovery contrary to the provisions of ORC § 2323.51."

{¶ 53} Both of these assignments of error are directed to a claim that the trial court's findings of fact as to what information attorneys Requarth and Deitering conveyed to the trial court during the April 27, 2005 conference call were erroneous. In order to reach this assignment of error, we must first determine that the trial court erred in finding that they did not represent to the court that the absence of a certain witness, an Englewood employee named Riggleman, was due to the actions of Englewood's city manager.

{¶ 54} No single standard of review applies in R.C. 2323.51 cases; the inquiry is one of mixed questions of law and fact. Purely legal questions are subject to de novo review. *Stuller v. Price*, Franklin App. No. 03AP–30, 2003-Ohio-6826, 2003 WL 22966820, at ¶ 14. Review of a trial court's factual determinations, however, involves some degree of deference, and we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support them. *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 673 N.E.2d 628.

{¶ 55} It is clear that there was controverted evidence before the court as to the import of the telephone conference call between the court and counsel on April 27, 2005. Attorney Requarth's affidavit filed with the court clearly attempts to cast her representations as informing the court only that she believed, in good faith based upon prior experience, that Riggleman's absence was due to the acts of Englewood's city manager. To the contrary, attorney Washington's affidavit says that the representation made to the court by attorney Requarth was unequivocally that Riggleman did not appear because Englewood's city manager told him not to appear.

{¶ 56} Particularly telling is a colloquy between the trial court and Deitering at the September 23, 2005 hearing on the issue of whether counsel had engaged in frivolous conduct:

{¶ 57} "THE COURT: But you'll concede that the information, during the phone conversation, was not given to me. That is, I was not told that the belief that Mr. Smith had something to do with Mr. Riggelman's [sic] failure to appear in January was based upon past experience with Mr. Smith, not upon any personal knowledge about this case.

{¶ 58} "MS. DEITERING: That was not clarified, Your Honor, she did not— she simply made the one statement and did not go on to explain why it was. * * *

{¶ 59} "THE COURT: And I understand that, Joyce. But the one that troubles me and that I'm wrestling with is this, and again, the phone conversation was not recorded. We are all who were part of that phone conversation, I am sure, struggling to some extent with the exact words that were said. I will say this, for the record, however, I came away from that hearing—excuse me—I came away from that telephone conversation with the impression that Mr. Riggleman had conveyed to you or at least had conveyed to Mr. Shields that he did not appear at the January 13th hearing because Mr. Smith had in some way persuaded him not to."

{¶ 60} At that point, Deitering concedes that the misimpression that was conveyed to the court during the April 27, 2005 telephone conference regarding the reasons for the absence of Riggleman was not cleared up at any time prior to the scheduled June 13, 2005 hearing by either herself or Requarth.

{¶ 61} Therefore, there was competent, credible evidence before the court from which it might have reached either conclusion. Because the statements of attorney Requarth and the actions of attorney Deitering occurred in the presence of the trial court, and because the trial court was in the best position to make this factual determination, we will not disturb this finding.

{¶ 62} Because we find that the trial court made an appropriate factual finding as to the frivolous conduct of counsel, it is immaterial whether attorneys Requarth and Deitering were seeking the court's forebearance until they could conduct discovery regarding Riggleman's testimony, or were seeking to reopen the hearing, which the court granted. Frivolous conduct is defined to include "factual contentions that are not warranted by the evidence." R.C. 2323.51(A)(2)(iv). Therefore, the misrepresentation of counsel was untrue, and it delayed the case, causing Englewood to incur additional expense and attorney fees.

{¶ 63} The seventh and eighth assignments of error are overruled.

### Ninth Assignment of Error

{¶ 64} "The trial court committed prejudicial error by imposing sanctions against Ms. Deitering for her passivity."

{¶ 65} In this assignment of error, attorney Deitering argues that she made no statements to the court and, therefore, she cannot be sanctioned for any conduct or statement of her co-counsel, Requarth.

{¶ 66} Clearly, Deitering and Requarth were acting in concert when they moved the court on April 21, 2005, to defer ruling on the matter. Both Deitering and Requarth were a part of the April 27, 2005 telephone conference during which Requarth misrepresented the facts upon which their motion was premised. Deitering did nothing during that conference to correct the misimpression that her co-counsel was advocating.

{¶ 67} The trial court found Deitering's frivolous conduct to have consisted of "acquiescing in Ms. Requarth's comment regarding Mr. Smith's interference when she knew that the comment had no evidentiary support." Clearly, an attorney who knowingly acquiesces in the active misrepresentation of facts by his or her co-counsel to a court, without clarifying that misrepresentation to the court, can likewise be found to have engaged in frivolous conduct.

{¶ 68} Furthermore, this issue was never raised in the trial court. Deitering argued at the September 23, 2005 hearing on the issue of frivolous conduct on behalf of both Requarth and herself, and did not raise this issue. It is well settled that a nonconstitutional issue raised for the first time on appeal is not properly before a reviewing court. See, e.g., *Blausey v. Stein* (1980), 61 Ohio St.2d 264, 266, 15 O.O.3d 268, 400 N.E.2d 408.

{¶ 69} Appellants' ninth assignment of error is overruled.

## Tenth Assignment of Error

{¶ 70} "The court committed prejudicial error by awarding attorney fees for services which were not reasonably incurred as the result of the conduct of Deitering and/or Requarth."

{¶ 71} In this assignment of error, Deitering and Requarth argue that because their April 21, 2005 motion requested the court to defer ruling only until they could take the deposition of Riggleman, the court should not have ordered the evidence reopened and should not have scheduled the June 9, 2005 hearing. Therefore, they argue that the trial court, in its award of attorney fees, considered expenses that related to other than what they requested in their motion.

{¶ 72} This argument is of course specious. First, the April 21, 2005 motion, which they have denominated as a "notice," asked to present newly discovered evidence. Second, when the court ordered the June 9, 2005 hearing on the matter, Deitering and Requarth raised no objection, and they acquiesced in the procedure to be employed in response to their motion and representations. At no

time did they attempt to depose or even interview Riggleman prior to the June 9, 2005 hearing, instead electing to simply call him as a witness at that time.

{¶ 73} "[W]here a trial court has found the existence of frivolous conduct, the decision to assess or not to assess a penalty lies within the sound discretion of the trial court." *Wiltberger*, 110 Ohio App.3d at 52, 673 N.E.2d 628. Because the appellants have failed to demonstrate an abuse of discretion by the trial court in this regard, we overrule the tenth assignment of error.

{¶ 74} Having overruled all of Appellants' assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

BROGAN and POWELL, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third District Court of Appeals, and STEPHEN W. POWELL, J., of the Twelfth District Court of Appeals, sitting by assignment.