OPINION
{¶ 1} Plaintiff-appellant, White Castle System, Inc., appeals the judgment of the Butler County Court of Common Pleas affirming the decision of defendant-appellee, West Chester Township Zoning Commission, which required White Castle to relocate the drive-thru for a planned restaurant. We affirm.
 {¶ 2} In 1995, the subject property along Cincinnati-Dayton Road was rezoned from *Page 2 
"A-1" Agricultural to "C-PUD" at the request of the property owner. At the time, a preliminary development plan was approved for a large commercial/retail development. White Castle expressed interest in developing "Lot 4" on the property as a drive-thru restaurant. On October 18, 2005, White Castle submitted a final development plan for the lot. On December 19, 2005, the zoning commission held a public hearing and voted to approve the plan with conditions. On January 23, 2006, the commission formally adopted a resolution for the proposed White Castle restaurant.
 {¶ 3} White Castle took exception to two conditions imposed by the zoning commission: 1) relocation of the drive-thru and 2) elimination of the "castle" architecture on the building and replacing it with a flat roofline. The relocation of the drive-thru would require White Castle to change the placement of the menu board to the rear of the building and move the drive-thru window from the south side of the building to the north side. White Castle disputes this relocation because it would result in motor vehicles having to make a double loop around the building, which White Castle believes would inconvenience potential customers and create potential traffic problems within the site. On February 15, 2006, White Castle appealed to the Butler County Court of Common Pleas. On February 27, 2006, the zoning commission adopted findings of fact in relation to its approval with conditions. White Castle filed a motion to strike the findings of fact or, in the alternative, to admit additional evidence pursuant to R.C. 2506.03. The motion was denied by the common pleas court.
 {¶ 4} Following oral argument, the lower court referred the parties to mediation. During mediation, the zoning commission conceded on the castle architecture issue, but no resolution was agreed upon for the relocation of the drive-thru. Following additional arguments by the parties, the common pleas court affirmed the zoning commission's requirement to relocate the drive-thru window. White Castle timely appeals, raising two assignments of error. *Page 3 
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS BY AFFIRMING THE DECISION OF THE WEST CHESTER TOWNSHIP ZONING COMMISSION THAT IMPOSED CONDITIONS ON WHITE CASTLE'S PERMITTED USE OF THE SUBJECT PROPERTY WHICH UNREASONABLY REGULATE THE ARCHITECTURAL DESIGN OF THE BUILDING BY INTERFERING WITH ITS CORPORATE IMAGE AND UNREASONABLY REGULATE THE DESIGN OF THE SITE OPERATION BY REQUIRING MOTOR VEHICLES TO DRIVE TWICE AROUND THE BUILDING."
 {¶ 7} In the first assignment of error, White Castle argues that the West Chester Zoning Commission does not have authority to regulate the location of the drive-thru or vehicular traffic within a site.[1] In opposition, the zoning commission argues that R.C. 519.021, authorizing townships to establish and modify planned-unit developments, in conjunction with the township's zoning resolution provide the requisite statutory authority.
 Standard of Review {¶ 8} Appeals of administrative agency decisions are governed by R.C. Chapter 2506. The standard of review in R.C. Chapter 2506 administrative appeals imposed upon a common pleas court varies distinctly from the standard of review imposed upon an appellate court. A common pleas court reviewing an administrative appeal pursuant to R.C. 2506.04 weighs the evidence in the whole record and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. Shields v. Englewood, 172 Ohio App.3d 620,2007-Ohio-3165, ¶ 28. *Page 4 
 {¶ 9} An appellate court's review of such an administrative appeal, however, is more limited in scope. Henley v. Youngstown Bd. of ZoningAppeals, 90 Ohio St.3d 142, 147, 2000-Ohio-493, quoting Kisil v.Sandusky (1984), 12 Ohio St.3d 30, 34. Unlike the common pleas court, the appellate court does not weigh the evidence or determine questions of fact. Henley at 147. Rather, the appellate court must affirm the common pleas court's decision unless it finds, as a matter of law, that the decision is not supported by a preponderance of reliable, probative, and substantial evidence. Mills v. Union Twp. Bd. of ZoningAppeals, Clermont App. No. CA2005-02-013, 2005-Ohio-6273, ¶ 6.
 Analysis {¶ 10} "A township's authority to enact zoning ordinances is not inherent, nor does it derive from a constitutional provision. Rather, this authority is dependent upon a grant by the General Assembly."Torok v. Jones (1983), 5 Ohio St.3d 31, 32.
 {¶ 11} R.C. 519.02 grants townships the authority to enact zoning regulations and provides in relevant part that "in the interest of the public health and safety, the board of township trustees may regulate by resolution, in accordance with a comprehensive plan, the location, height, bulk, number of stories, and size of buildings and other structures, * * *, the uses of buildings and other structures * * *."
 {¶ 12} R.C. 519.021 grants townships statutory authority to establish planned-unit developments. A planned-unit development is a development which is planned to integrate residential, commercial, industrial, and any other use. 10 Ohio Jurisprudence 3d (2008) 338, Buildings, Section 87. PUD regulations must "further the purpose of promoting the general public welfare, encouraging the efficient use of land and resources, promoting greater efficiency in providing public and utility services, and encouraging innovation in the planning and building of all types of developments. Within a planned-unit development, the township zoning regulations, where applicable, need not be uniform, but may vary in order to *Page 5 
accommodate unified development and to promote the public health, safety, morals, and the other purposes of this section."
 {¶ 13} In accordance with R.C. 519.021, West Chester Township adopted Article 26 of the West Chester Township Zoning Resolution, which regulates planned-unit development of districts in the township. Article 26 provides a two-step process for the approval of a development PUD. First, the property owner must submit a Preliminary Development Plan for the entire site. Second, when a specific part or stage of the overall PUD is proposed to be developed, the property owner or developer must submit a site-specific Final Development Plan for that stage. The Final Development Plan is a detailed plan that encompasses all facets of the particular development and must be consistent with the approved Preliminary Development Plan and the applicable provisions of the Zoning Resolution. As part of the regulations, the township trustees in 1995 passed a resolution applicable to PUD zoning and the approval of development plans. The resolution specifically stated that "building design information, including exterior materials shall be determined on all Final Development Plans" and "an internal circulation plan for pedestrian movement shall be required on all Final Development Plans."
 {¶ 14} The common pleas court stated, "[t]his Court agrees that a condition delineating the location of the drive-thru in order to enhance safety and aesthetics falls within the criteria to be considered and the discretion of the Zoning Commission. * * * the proposed plan advances the public health safety, welfare and morals. * * * there was ample evidence in the record that the relocation of the drive-thru would meet the goal of reducing any negative impact on the aesthetics of the neighborhood. * * * the relocation of the drive-thru also addressed safety concerns that were raised by the Commission members. * * * The additional condition placed on the Final Development Plan regarding relocation of the drive-thru facility is reasonable and within the authority of the Zoning Commission." *Page 6 
 {¶ 15} White Castle urges that R.C. 519.02 grants no authority for townships to regulate vehicular traffic through zoning and, as a result, the zoning commission cannot require the location of the drive-thru to be changed.
 {¶ 16} In the findings of fact, the commission stated, "[t]he restaurant's drive through lane and menu board were originally proposed to be placed in a highly visible location (building front). The drive through lane and menu board placement as approved by the Zoning Commission are less visible and more aesthetically acceptable (building rear). The menu board location and drive through lane were originally proposed to be placed in a location that would heighten conflicts between automobile traffic and pedestrians, including pedestrians having to navigate through automobiles stacked in the drive through traffic lane. The menu board location and drive through lane as approved will lessen automobile and pedestrian conflict. The menu board location and drive through lane were originally proposed to be placed in a location that would cause conflicting headlight glare between traffic in the stacking lane and northbound Cincinnati-Dayton Road traffic. The menu board location and drive through as approved will lessen conflicting headlight glare."
 {¶ 17} As noted above, R.C. 519.02 allows townships to "regulate by resolution the location * * * of buildings and other structures" in the interest of the public health and safety. In West Chester TownshipZoning v. Fromm (2001), 145 Ohio App.3d 172, this court held that "other structures" includes "the erection of fences [which] can be regulated and controlled by a township zoning resolution." Id. at 178.
 {¶ 18} Similarly, a drive-thru menu board also falls within the category of "other structure" and the township may regulate the location thereof "in the interest of the public health and safety."
 {¶ 19} Moreover, the zoning commission also expressed concern over the planned location for the drive-thru window. The commission believed that White Castle's location of *Page 7 
the window would create potential safety risks within the site, traffic issues along a major thoroughfare, and would be more aesthetically pleasing if moved to the rear of the building; a valid exercise of the authority prescribed to the zoning commission.
 {¶ 20} Accordingly, we find that the common pleas court's decision is supported by reliable, probative, and substantial evidence.
 {¶ 21} White Castle's first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANTS BY DENYING PLAINTIFF-APPELLANTS' MOTION TO STRIKE AND MOTION TO PRESENT ADDITIONAL EVIDENCE CONCERNING THE FINDINGS OF FACT ADOPTED BY THE WEST CHESTER TOWNSHIP ZONING COMMISSION SUBSEQUENT TO PLAINTIFFS-APPELLANTS [sic] APPEAL TO COURT."
 {¶ 24} In its second assignment of error, White Castle argues the common pleas court erred by denying its motion to strike the findings of fact by the zoning commission and denying its motion to present additional evidence. First, White Castle argues the findings of fact are not representative of the evidence presented at the administrative hearing. White Castle claims there was no witness testimony to support the zoning commission's finding that the drive-thru location would create traffic concerns. Second, White Castle argues that it was entitled to introduce additional evidence pursuant to R.C. 2506.03.
 {¶ 25} R.C. 2506.03(A) states in pertinent part that, "The hearing of an appeal taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code shall proceed as in the trial of a civil action, but the court shall be confined to the transcript filed under section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant," that one of the statutory exceptions apply. *Page 8 
 {¶ 26} White Castle urges that the fifth exception, that the "officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision," applies to the case at bar. White Castle argues that, although the zoning commission filed findings of fact, there is "uncertainty in the record" because the commission "prepared findings of fact based on evidence outside the record." As a result, White Castle argues the lower court erred by not allowing it to introduce additional evidence.
 {¶ 27} White Castle's argument is unpersuasive. The common pleas court in this case found that "[a]n examination of the record in the instant case fails to reveal any evidence manifest on the face of the transcript or by affidavit alleging that the transcript is deficient in one or more of the ways enumerated in R.C. 2506.03(A) through (E)."
 {¶ 28} The findings of fact were properly filed as part of the administrative record by the commission. Moreover, after a review of the record, we find sufficient evidence to support the zoning commission's findings of fact. Each of the concerns expressed by the commission and the reasons for requiring White Castle to relocate the drive-thru were discussed at the zoning commission hearing. Further, White Castle was given an opportunity at the hearing to address each concern.
 {¶ 29} White Castle's second assignment of error is overruled.
 {¶ 30} Judgment affirmed.
WALSH, P.J. and BRESSLER, J., concur.
[1] On appeal, White Castle also argues the zoning commission does not have authority to regulate the castle architecture planned for the restaurant. As noted in the factual portion of this opinion, this issue was resolved during mediation. Accordingly, the exterior appearance issue is not before this court on appeal and any discussion thereof would be moot. *Page 1