[Cite as *State ex rel. Rogers v. Titan Wrecking & Environmental, L.L.C.*, 2013-Ohio-5059.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO, ex rel., | : | |
| NANCY H. ROGERS | : | Appellate Case No. 25603 |
| | : | |
| Plaintiff-Appellee | : | Trial Court Case No. 2008-CV-10301 |
| | : | |
| v. | : | |
| | : | (Civil Appeal from |
| TITAN WRECKING & | : | Common Pleas Court) |
| ENVIRONMENTAL, LLC | : | |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of November, 2013.

. . . . . . . . . . .

MICHAEL DeWINE, by WEDNESDAY M. SZOLLOSI, Atty. Reg. #0075655, and SARAH BLOOM ANDERSON, Atty. Reg. #0082817, Ohio Attorney General's Office, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215-3400
        Attorneys for Plaintiff-Appellee

RONALD J. KOZAR, Atty. Reg. #0041903, Kettering Tower, Suite 2830, 40 North Main Street, Dayton, Ohio 45423
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.,

**{¶ 1}** Titan Wrecking & Environmental, LLC appeals from the trial court's judgment

entry denying its post-trial motions for sanctions and attorney fees.

{¶ 2} Titan advances two assignments of error on appeal. First, it contends the trial court erred in denying its motion for frivolous-conduct sanctions under R.C. 2323.51. Second, it claims the trial court erred in denying its motion for attorney fees under R.C. 2335.39.

{¶ 3} The present appeal stems from a 2008 lawsuit filed by the State of Ohio against Titan. The State alleged that Titan had improperly handled "regulated asbestos-containing material" (RACM) when removing vinyl floor tile from an elementary school. The case proceeded to a bench trial where the tile was shown to contain more than one-percent asbestos and the quantity of tile involved was shown to exceed the minimum regulated amount. The trial court nevertheless entered judgment in favor of Titan, holding that the State had failed to prove the existence of RACM for two reasons: (1) the evidence did not establish that the tile had been rendered friable, and (2) the evidence did not establish that the tile had been subjected to grinding. In light of these findings, the trial court did not address Titan's additional argument that the State had failed to use the prescribed method of analysis to determine the tile's asbestos content.

{¶ 4} On appeal, this court affirmed. *See State ex rel. DeWine v. Titan Wrecking & Environmental, LLC*, 2d Dist. Montgomery No. 24661, 2012-Ohio-1429. Although the evidence was conflicting, we found competent, credible evidence to support the trial court's findings with regard to a lack of friability or grinding. We overruled as moot Titan's cross assignment of error, which alleged that the tile also was not RACM because it had not been shown to contain more than one percent asbestos using the particular method of analysis prescribed by the applicable regulations.

{¶ 5} After we affirmed the judgment in favor of Titan, the trial court proceeded to resolve two motions: (1) a motion for frivolous-conduct sanctions under R.C. 2323.51 and (2) a motion for attorney fees under R.C. 2335.39. Both motions involved a federal regulation, 40 C.F.R. Part 763, Subpart E, Appendix E, Section 1. Titan claimed this regulation required "point counting" with polarized light microscopy (PLM) to determine the asbestos content of the tiles at issue. Because a different method of analysis had been used, Titan argued that the State had no basis for bringing its suit, and contended that it was doomed from the start. As a result, Titan claimed entitlement to sanctions for frivolous conduct under R.C. 2323.51 and to attorney fees under R.C. 2335.39.

{¶ 6} The trial court held a December 28, 2012 hearing on Titan's motions. Immediately after the hearing, it overruled the motions from the bench. The trial court found that the State had reasonably relied on analysis conducted with transmission electron microscopy (TEM). It reasoned that "on the issue of determining whether or not there was the one percent or greater asbestos in the material, * * * the TEM test is equivalent to PLM." (Sanctions Tr. at 54). The trial court memorialized its ruling in a January 3, 2013 judgment entry. (Doc. #40).

{¶ 7} On appeal, Titan insists that an award of frivolous-conduct sanctions and attorney fees was warranted because the State brought suit without having PLM point-counting analysis performed on the tiles. As set forth above, Titan insists that such analysis was mandated by 40 C.F.R. Part 763, Subpart E, Appendix E, Section 1. Absent this method of analysis, Titan insists that the State could not have proved the existence of RACM and should have known so before filing suit. Therefore, Titan claims the lawsuit was frivolous under R.C. 2323.51(A)(2), as it was not warranted under existing law, could not be supported by a good-faith argument for an extension of the law or for the establishment of new law, and  consisted of allegations with no

evidentiary support. Titan also argues that an award of attorney fees was justified under R.C. 2335.39, which, among other things, authorizes an eligible prevailing defendant to recover attorney fees from the State unless the State can establish that its initiation of the lawsuit was "substantially justified."

{¶ 8}     At the outset of our analysis, we note that Titan does not dispute the existence of a triable issue below regarding whether the floor tiles had been rendered friable or had been subjected to grinding.   Titan argues only that failure to analyze the tiles with PLM point counting meant the State had not used the method specified in 40 C.F.R. Part 763, Subpart E, Appendix E, Section 1 and, therefore, that the tiles could not possibly have been shown to be RACM, regardless of friability or grinding.

{¶ 9}     In its prior opinion, this court recognized that Ohio administrative regulations govern the removal and disposal of "regulated asbestos containing material" or RACM. *Titan Wrecking*, 2012-Ohio-1429, at ¶18-22. To constitute RACM, the floor tiles at issue were required to contain more than one per cent asbestos as determined using the method specified in  40 C.F.R. Part 763, Subpart E, Appendix E, Section 1. *See* Ohio Adm.Code §3745-20-01(B)(9), (10), (20), and (42). That arcane regulation is titled "Interim Method of the Determination of Asbestos in Bulk Insulation Samples." Section 1 is captioned "Polarized Light Microscopy." It provides for the identification of asbestos fibers in a sample using a polarized light microscope. It further provides for quantitation of the asbestos present using a "point counting" technique. Alternatively, Section 1 authorizes quantitation using an "equivalent estimation method." The applicable version of the Ohio Administrative Code also provided guidance with regard to point counting. Specifically, former OhioAdm. Code 3745-20-01(B)(20), which discussed "friable

asbestos material," provided: "If the asbestos content is less than ten percent as determined by a method other than point counting by Polarized Light Microscopy, the asbestos content may be verified by point counting using Polarized Light Microscopy."[1]

{¶ 10}   We previously summarized the evidence about the testing that occurred on the floor tiles at issue:

Data Chem analyzed the samples provided by [the Regional Air Pollution Control Agency] and [the Ohio Department of Health] and provided reports to those agencies. RAPCA had requested that its samples be analyzed using the bulk Polarized Light Microscopy ("PLM") method, which involves a visual estimation of the amount of asbestos; PLM is not especially effective with respect to bulk building materials. RAPCA did not request, and Data Chem did not do, a "point counting analysis" (which also uses a polarized light microscope), the method mentioned in the EPA regulations. ODH requested PLM analysis with point counting if the percentage of asbestos was less than ten; Data Chem analyzed the ODH samples by Transmission Electron Microscopy ("TEM"), a method which is more sensitive than a PLM analysis. Point counting is not feasible on floor tiles.

Data Chem determined that all three of the RAPCA samples contained more than one percent asbestos. Data Chem found asbestos in four of the five samples submitted by ODH; two of the four contained asbestos in an amount greater than one percent. The samples submitted by the two agencies were held for

---

[1] Although the language in the current version of Ohio Adm.Code 3745-20-01(B)(20) has been changed, the applicable version is the one effective November 2002 and quoted above. *See Titan Wrecking* at ¶17 ("For purposes of this appeal, we are concerned with the version of Ohio Adm. Code Chapter 3745-20, effective November 2002, which the State introduced at trial as Exhibit 33.").

about two months by Data Chem. The agencies did not request the samples be returned, so Data Chem disposed of the samples.

*Titan Wrecking* at ¶12-13.

{¶ 11}   With regard to identification of asbestos fibers in the tile samples submitted to Data Chem by RAPCA for testing, we note that PLM analysis was performed. (Trial Tr. Vol. II at 462-478). That analysis revealed the presence of asbestos in three of three samples. (*Id*.). With regard to quantification of the asbestos in RAPCA's samples, a visual estimate was made using a polarized light microscope, but point counting was not performed. (*Id*.). The PLM visual estimate placed the asbestos content at between one and three percent. (Plaintiff's Tr. Exh. 19). That estimate was checked and confirmed by another employee using TEM analysis.[2] (Trial Tr. Vol. II at 478-480; Plaintiff's Tr. Exh. 18). As for the tile samples submitted to Data Chem by ODH, no PLM analysis was performed. But four of five samples were found to contain asbestos fibers using TEM analysis. Two contained slightly more than one percent asbestos. Two others contained 5.83 percent and 11.8 percent asbestos respectively. (Trial Tr. Vol. II at 408-413; Plaintiff's Tr. Exh. 21).

{¶ 12}   In light of the foregoing evidence, we believe the State had a non-frivolous basis for bringing its lawsuit against Titan. We also believe the State's initiation of the lawsuit was "substantially justified" despite the outcome. As set forth above, all three tile samples submitted by RAPCA *were* examined with a polarized light microscope. A PLM visual estimate resulted in

---

[2]Polarized light microscopy has been characterized as "a 20-year-old technology * * * known to be far less sensitive in detecting asbestos than the newer transmission electron microscopy * * *." *Benzman v. Whitman*, S.D.N.Y. No. 04 Civ. 1888, 2006 WL 250527, *3 (Feb. 2, 2006), *aff'd in part and rev'd in part*, 523 F.3d 119 (2008). At trial, Data Chem representative Anna Marie Ristich confirmed that TEM examination "allows you to detect fibers that would be too small to be seen" through PLM examination. (Trial Tr. Vol. II at 400).

a determination that the tiles each contained between one and three percent asbestos. At least one of RAPCA's tile samples was re-examined using a transmission electron microscope, and the visual estimate was confirmed.

{¶ 13}  Although Titan contends TEM examination and PLM point counting are not "equivalent" estimation methods for purposes of asbestos quantification, the State could have reasonably concluded otherwise (as the trial court did below) and proceeded with its lawsuit on that basis. Titan insists that the two methods are not equivalent because TEM analysis is more sensitive to the presence of asbestos fibers. Titan also claims the "equivalent estimation method" referred to in 40 C.F.R. Part 763, Subpart E, Appendix E, Section 1, still must involve the use of a polarized light microscope. Both of Titan's arguments are debatable. Although TEM examination is more sensitive than PLM point counting, the methods are equivalent insofar as they both involve using a microscope to accurately determine the asbestos content of a sample. Whether the greater accuracy of TEM examination makes the two methods not equivalent is a question on which reasonable disagreement may exist. We reach the same conclusion with regard to Titan's claim that any quantification of asbestos content done by a method other than PLM point counting still must use a polarized light microscope. The applicable regulation, 40 C.F.R. Part 763, Subpart E, Appendix E, Section 1, does not clearly say this. It provides for quantification using point counting or an "equivalent estimation method." Whether that equivalent method also must involve a polarized light microscope is not specified. In any event, we need not decide whether TEM examination and PLM point counting actually are equivalent estimation methods. For purposes of Titan's motions for sanctions and attorney fees, the issue is whether the State itself reasonably could have believed TEM examination was "equivalent" to

PLM point counting, not whether that belief was legally correct.

**{¶ 14}** Finally, the State reasonably could have relied on former Ohio Adm.Code 3745-20-01(B)(20)'s directive that "[i]f the asbestos content is less than ten percent as determined by a method other than point counting by Polarized Light Microscopy, the asbestos content *may be verified by point counting* using Polarized Light Microscopy." (Emphasis added). This language suggests that where, as here, the asbestos content in a sample is found by a PLM visual estimate to be between one and three percent, verification by PLM point counting is discretionary, not mandatory. Therefore, the State reasonably could have elected to proceed with its lawsuit despite the lack of point counting.

**{¶ 15}** Even applying the de novo standard of review urged by Titan,[3] we hold that the trial court did not err in denying its motion for sanctions under R.C. 2323.51. We also hold that the trial court did not err in denying Titan's motion for attorney fees under R.C. 2335.39.[4]

**{¶ 16}** Titan's assignments of error are overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

---

[3]Titan contends the standard of review for the denial of a motion for sanctions under R.C. 2323.51 is unclear. It notes that the Ohio Supreme Court recited an abuse-of-discretion standard in *State ex rel Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶11, whereas other appellate courts have applied a de novo standard, at least where a legal question is involved. *See, e.g., Shields v. Englewood*, 172 Ohio App.3d 620, 2007-Ohio-3165, 876 N.E.2d 972, ¶54 (2d Dist.) (recognizing that "[n]o single standard of review applies in R.C. 2323.51 cases; the inquiry is one of mixed questions of law and fact").

[4]In light of these determinations, we need not address the State's alternative arguments that its lawsuit was justified by Titan's admission to the presence of asbestos in the tiles, by the federal "credible evidence" rule, or by an EPA guidance bulletin attached to its appellate brief.

FAIN, P.J., and GALLAGHER, J., concur.

(Hon. Eileen A. Gallagher, Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Michael DeWine
Sarah B. Anderson
Wednesday M. Szollosi
Ronald J. Kozar
Hon. Timothy N. O'Connell