[Cite as *State ex el. Kostoff v. Beck Energy Corp.*, 2019-Ohio-1221.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO, ex rel. THOMAS W.
KOSTOFF, LAW DIRECTOR, CITY OF
MUNROE FALLS, OHIO, et al.

     Appellants

     v.

BECK ENERGY CORPORATION

     Appellee

C.A. No.     28719

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-05-2493

DECISION AND JOURNAL ENTRY

Dated: April 3, 2019

HENSAL, Judge.

**{¶1}** The City of Munroe Falls and its law director, Thomas Kostoff, appeal a judgment of the Summit County Court of Common Pleas that granted Beck Energy Corp.'s motion for sanctions under Civil Rule 11 and Revised Code Section 2323.51. For the following reasons, this Court reverses.

I.

**{¶2}** In 2011, the Ohio Department of Natural Resources (ODNR) issued a permit to Beck to drill an oil and gas well on property in Munroe Falls. After Beck began drilling, the City issued a stop work order and sought an injunction against Beck because Beck had not complied with its ordinances regarding drilling. The trial court granted an injunction, but this Court reversed, concluding that the five ordinances at issue were preempted by state law. *State ex rel. Morrison v. Beck Energy Corp.*, 9th Dist. Summit No. 25953, 2013-Ohio-356, ¶ 74. The Ohio

Supreme Court, in a plurality opinion, affirmed this Court's judgment. *State ex rel. Morrison v. Beck Energy Corp.*, 143 Ohio St.3d 271, 2015-Ohio-485.

{¶3} In April 2016, Beck's ODNR permit expired. A couple of weeks later, representatives of Beck met with the new mayor of the City, its law director, and one of its zoning officials. Following that meeting, the City asked Beck to complete a zoning application before doing any drilling. When Beck refused, the City and the State of Ohio, on behalf of Mr. Kostoff,[1] filed a complaint for declaratory judgment, asking the trial court "to declare whether Munroe Falls has the right to enforce its zoning ordinances relative to oil and gas wells within its municipal jurisdiction; [and] to declare whether Beck is required to obtain a zoning certificate and/or a zoning variance from Munroe Falls prior to drilling[.]" The complaint also requested "a stay of all drilling activities * * *." The City later moved for a temporary restraining order against Beck. Beck counterclaimed, asserting claims of tortious interference with a business relationship, takings, procedural due process, and substantive due process. Following hearings, the court denied the motion for a temporary restraining order and granted summary judgment to Beck.

{¶4} Several months later, Beck dismissed its counterclaims. It then moved for sanctions against the City and Mr. Kostoff under Rule 11 and Section 2323.51. Following a hearing, the trial court granted Beck's motion, concluding that the City and Mr. Kostoff engaged in frivolous conduct under Section 2323.51 when they filed the complaint because it was not warranted under existing law or supported by a good faith argument for an extension, modification, or reversal of that law, or for the establishment of new law. The court also

---

[1] Because the State of Ohio was only a party to this action on behalf of Mr. Kostoff, was represented by Mr. Kostoff, and was not ordered to pay any sanctions, its inclusion in the proceedings will be omitted to increase readability.

concluded that Mr. Kostoff violated Rule 11 when he filed the motion for a temporary restraining order. The City and Mr. Kostoff (collectively "the City") have appealed, assigning three errors.

II.

### ASSIGNMENT OF ERROR I

THE DOCTRINE OF RES JUDICATA PRECLUDED BECK ENERGY'S SANCTIONS REQUEST BECAUSE: (A) BECK DISMISSED WITH PREJUDICE ITS CLAIM FOR ATTORNEY'S FEES UNDER CIV. R. 11 AND R.C. 2323.51; AND (B) BY DISMISSING ITS COUNTERCLAIM WITH PREJUDICE BECK IS DEEMED TO HAVE FAILED ON THE MERITS OF ITS CLAIMS ASSERTING, AMONG OTHER THINGS, THAT THE CITY OF MUNROE FALLS HAD FILED ITS COMPLAINT "WHOLLY WITHOUT JUSTIFICATION."

{¶5} The City argues that the trial court should have concluded that Beck's request for sanctions was barred under the doctrine of res judicata. It notes that Beck included an affirmative defense in its Answer and Counterclaim that alleged that they lacked a good faith basis for their action and should be sanctioned under Rule 11 and Section 2323.51. The City argues that, although it was labelled as an affirmative defense, Beck's request for sanctions was actually another counterclaim. Accordingly, when Beck dismissed its counterclaims, Beck also dismissed its request for sanctions with prejudice and, thus, should have been barred from requesting sanctions in a later motion.

{¶6} Civil Rule 8(C) provides, in part, that, "[w]hen a party has mistakenly designated * * * a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation." This Court has recognized that a request for attorney's fees under Section 2323.51 may take the form of a counterclaim. *Texler v. Papesch*, 9th Dist. Summit No. 18977, 1998 WL 597870, *2 (Sept. 2, 1998) ("Although the statute does not specify whether a party can make a claim for attorney's fees in the form of a counterclaim, the case law makes clear that it is an accepted method."). The trial court declined to construe Beck's request-

for-sanctions affirmative defense as a counterclaim, however, because it found that doing so would not be "doing substantial justice[.]" Upon review of the record, we conclude that the court did not abuse its discretion. *See Argent Mortg. Co., LLC v. Phillips*, 9th Dist. Summit No. 24979, 2010-Ohio-5826, ¶ 27.

{¶7} The City argues that Beck's motion for sanctions was barred by collateral estoppel, also known as issue preclusion. It notes that Beck alleged in one of its counterclaims that their conduct "was wholly without justification and * * * committed willfully and with the malicious intent of interfering with" their drilling activities. It argues that, when Beck dismissed its counterclaims with prejudice, it conclusively established that the opposite was true, specifically, that their conduct was justified and was not committed with malicious intent.

{¶8} "Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). It applies "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Id*.

{¶9} Beck voluntarily dismissed its counterclaims with prejudice. This Court has held that, although a voluntary dismissal with prejudice "serves as an adjudication on the merits, we do not believe the issues have been 'actually litigated' as required for issue preclusion." *Moldovan v. Lear Siegler, Inc.*, 9th Dist. Lorain No. 92CA005375, 1993 WL 46656, *3 (Feb. 24, 1993). Beck's dismissal of its counterclaims, therefore, did not preclude it from arguing in its motion for sanctions that the City did not have reasonable justification to file their request for declaratory relief. The City's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

IF A PARTY HAS A GOOD FAITH AND REASONABLE BASIS TO ARGUE ABOUT ITS ZONING RIGHTS OR FOR AN EXTENSION OF THOSE RIGHTS, IT MAY FILE A DECLARATORY JUDGMENT WITHOUT BEING SUBJECTED TO SANCTIONS UNDER CIV. R. 11 OR R.C. 2323.51.

**{¶10}** The City next argues that the trial court incorrectly granted Beck's motion for sanctions. Specifically, it asserts that the court incorrectly determined that it violated Rule 11 and Section 2323.51(A)(2). We note that the trial court found that the City and Mr. Kostoff violated Section 2323.51(A)(2) when they filed the complaint for declaratory judgment. It found that Mr. Kostoff violated Rule 11 when he filed the motion for temporary restraining order. In its brief, the City focuses its argument on the court's ruling as to the filing of the complaint. Accordingly, we will begin our analysis with Section 2323.51.

**{¶11}** Section 2323.51(B)(1) provides that "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." The definition of frivolous conduct includes conduct that "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including * * * causing unnecessary delay * * *" or "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(i), (ii). "[A]nalysis of a claim under [R.C. 2323.51(A)(2)] boils down to a determination of (1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." *P.N. Gilcrest Ltd. Partnership v. Doylestown Family Practice,*

*Inc.*, 9th Dist. Wayne No. 10CA0035, 2011 WL 2448251, ¶ 32, quoting *Ceol v. Zion Industries, Inc.*, 81 Ohio App.3d 286, 291 (9th Dist.1992).

{¶12} This Court's standard of review on an appeal of an award of sanctions depends on the part of the analysis at issue. The trial court's factual findings will not be overturned if they are supported by competent, credible evidence. *S & S Computer Sys., Inc. v. Peng*, 9th Dist. Summit No. 20889, 2002-Ohio-2905, ¶ 9. We review questions of law, such as whether a claim is warranted under existing law, de novo. *Jefferson v. Creveling*, 9th Dist. Summit No. 24206, 2009-Ohio-1214, ¶ 16; *City of Lorain v. Elbert*, 9th Dist. Lorain No. 97CA006747, 1998 WL 195724, *2-3 (Apr. 22, 1998). Finally, we review the trial court's decision whether to impose sanctions for improper conduct under an abuse of discretion standard. *Gilcrest* at ¶ 29.

{¶13} The City argues that it acted reasonably and in good faith when it filed the complaint for declaratory relief. It asserts there is an inherent tension between the Home Rule powers of a municipality and statewide police statutes, which often result in justifiable litigation regarding preemption. It also asserts that the Ohio Supreme Court's *Morrison* decision left open the question of whether the General Assembly preempted all municipal zoning matters when it enacted Section 1509.02. It, therefore, argues that it had reasonable and good faith grounds to believe that it could require Beck to obtain a conditional use certificate before drilling. It also argues that just because the lawsuit was unsuccessful did not mean it was outrageous for it to file the complaint. It further argues that, in light of the fact that it was not seeking damages, but only direction from the trial court, its conduct was not so egregious as to warrant sanctions.

{¶14} We begin our analysis with an examination of the Ohio Supreme Court's *Morrison* decision. The issue in that case was "whether the Home Rule Amendment to the Ohio Constitution grants to the city of Munroe Falls the power to enforce its own permitting scheme

atop the state system." *Morrison*, 2015-Ohio-485, ¶ 1. The Court was concerned with five ordinances, one that prohibited any construction or excavation in the city without a zoning certificate and four that pertained specifically to oil and gas drilling.[2] *Id*. at ¶ 8-9. Three justices, working through the three-part analysis for determining whether a municipal ordinance must yield to a state statute, determined that the ordinances conflicted with Section 1509.02 because, by prohibiting drilling without compliance with local law, they rendered meaningless the permits bestowed to Beck under state law. *Id*. at ¶ 15, citing *Mendenhall v. City of Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, ¶ 17; *Id*. at ¶ 25. The justices rejected the city's argument that its ordinances addressed only "traditional concerns of zoning[,]" pointing out that the plain text of the ordinances established that their purpose was to regulate oil and gas drilling. *Id*. at ¶ 28. They noted that Section 1509.02 explicitly gives ODNR "sole and exclusive authority to regulate the permitting, location, and spacing of oil and gas wells" and reserves to the state the right to regulate "all aspects" of the location, drilling, and operation of wells. *Id*. at ¶ 30. Although explaining that cities retain the right to control some infrastructure decisions, they noted that those decisions cannot be exercised in a manner that unfairly impedes or obstructs oil and gas activities. *Id*. They left open the question, however, "whether other ordinances could coexist with the General Assembly's comprehensive regulatory scheme." *Id*. at ¶ 33.

{¶15} Justice O'Donnell wrote separately, concurring only in the judgment of the lead opinion. In his opinion, he emphasized the limited scope of the Court's decision, explaining:

> This appeal does not present the question whether R.C. 1509.02 conflicts with local land use ordinances that address only the traditional concerns of zoning laws, such as ensuring compatibility with local neighborhoods, preserving property values, or effectuating a municipality's long-term plan for development, by limiting oil and gas wells to certain zoning districts without imposing a separate permitting regime applicable only to oil and gas drilling.

---

[2] The ordinances were 1163.02, 1329.03, 1329.04, 1329.05, and 1329.06.

*Id*. at ¶ 38 (O'Donnell, J. concurring in judgment only). According to Justice O'Donnell, "it remains to be decided whether the General Assembly intended to wholly supplant all local zoning ordinances limiting land uses to certain zoning districts without regulating the details of oil and gas drilling expressly addressed by R.C. Chapter 1509." *Id*. at ¶ 39. In his view, the terms "location" and "spacing" in Section 1509.02 are technical terms and refer "to the placement of wells on a tract in relation to the resource pool and to each other." *Id*. at ¶ 44. He opined that the terms did not relate to whether an oil or gas well would be "compatible with the character and aesthetics of a particular zoning district, such as a residential neighborhood[.]" *Id*. Because the ordinances at issue, however, precluded Beck from drilling without obtaining a permit from the City, he agreed that the City's "parallel municipal permitting process for oil and gas wells" was preempted by Section 1509.02. *Id*. at ¶ 36. The remaining justices concluded that local ordinances can supplement state regulations and would have remanded the case to this Court to analyze whether the City's ordinances could stand separate and apart as zoning regulations. *Id*. at ¶ 65 (Lanzinger, J., dissenting).

{¶16} In its complaint, the City alleged that the well proposed by Beck is in an area of the city not zoned for oil and gas wells. The City pointed out that, under its Codified Ordinances, oil and gas wells are only permitted in an industrial district and then only as a conditional use. It argued that the Ohio Supreme Court's decision in *Morrison* stated that it "should have the authority to enforce its reasonable zoning restrictions even as they apply to the drilling of oil and gas wells." It alleged that Beck is required under its ordinances to obtain a conditional use certificate before beginning excavation or construction. It alleged that Beck had disputed that requirement and had indicated that it would begin drilling as soon as ODNR renewed its state permit. It alleged that the well is close to the City's water supply source and

that it was concerned about whether the well would jeopardize the integrity of that source. It acknowledged that Codified Ordinance 1133.03(c) "is in conflict" with Revised Code Section 1509. In light of its concerns about its water supply and its zoning ordinances, however, it requested that "the Court determine whether Munroe Falls has the right to enforce its zoning ordinances relative to oil and gas wells * * * and whether Beck is required to obtain a zoning certificate from Munroe Falls prior to drilling * * * and/or that Beck request a zoning variance from Munroe Falls."

{¶17} The Supreme Court's *Morrison* decision is narrow in scope and left questions open for later consideration. The third part of the three-part test that the plurality applied in *Morrison* is whether "the ordinance is in conflict with the statute." *Id*. at ¶ 15. The City argued in *Morrison* that the ordinances did not conflict with Section 1509.02 because they "regulate two different things." *Id*. at ¶ 28. Specifically, it argued that the ordinances addressed "traditional concerns of zoning" whereas the statute addressed "technical safety and correlative rights topics." *Id*. The plurality did not reach that issue because it determined that the ordinances clearly did not involve "traditional concerns of zoning[.]" *Id*. at ¶ 28. Justice O'Donnell also acknowledged in his opinion that the decision left open the question of whether "local land use ordinances that address only the traditional concerns of zoning laws" and do not "impos[e] a separate permitting regime applicable only to oil and gas drilling" like the ordinances at issue in *Morrison* would conflict with Section 1509.02. *Morrison* at ¶ 38 (O'Donnell, J., concurring in judgment only).

{¶18} In this case, the City argued that the question of whether it may enforce Codified Ordinance 1133.03(c) was not decided in *Morrison*. It argued that it had an interest in enforcing the ordinance because the drilling location is immediately adjacent to the source of the City's

water. The trial court declined to analyze the issue, however, because the City had written in its complaint that Codified Ordinance 1133.03(c) "is in conflict" with Revised Code chapter 1509. It, therefore, concluded that the City had admitted that its ordinance must yield to the state statutes.

{¶19} Upon review of the record, we conclude that, just because the City used the word "conflict" in its complaint does not necessarily mean that it admitted that its zoning ordinances must yield to the Revised Code under the test the Ohio Supreme Court applied in *Morrison*. Although using the word "conflict[,]" the City also asserted in its complaint that it was allowed to enforce "reasonable zoning restrictions" under *Morrison*, and it asked the court to determine whether it could enforce its zoning ordinances "in view of its concern over the integrity of its water supply source and zoning ordinances[.]" It argued in its opposition to Beck's motion for summary judgment that asking Beck to seek a zoning certificate or variance before it began drilling was consistent with the "traditional concerns of zoning laws" identified in *Morrison* and advanced its authority "to promote the public health, safety, convenience, comfort, prosperity, and general welfare[.]"

{¶20} Considering that *Morrison* did not answer whether local land use ordinances that address only the traditional concerns of zoning law are supplanted by Revised Code chapter 1509 and the City argued that "its conditional land use Ordinances are reasonable and traditional concerns of zoning law[,]" we conclude that the City's action was either "warranted under existing law, * * * supported by a good faith argument for an extension, modification, or reversal of existing law, or * * * supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(ii). Accordingly, we conclude that the trial court incorrectly determined that the City engaged in frivolous conduct when it filed its complaint.

{¶21} Regarding whether Mr. Kostoff violated Civil Rule 11, we note that the rule "requires an attorney to sign all pleadings and further provides that the signature constitutes a warrant that there is good ground for the action." *Heron Point Condominium Unit Owner's Assn. v. E.R. Miller, Ltd.*, 9th Dist. Summit Nos. 25861, 25863, 25998, 2012-Ohio-2171, ¶ 33. The trial court found that Mr. Kostoff filed the motion for temporary restraining order "to delay or prohibit the drilling of an ODNR permitted well" and to force Beck to go through the City's zoning process. Consistent with its conclusion that the City's entire action was frivolous, the court determined that "there were no good grounds to support" the filing of the motion. It also found Mr. Kostoff's assertion that he had filed the motion to expedite a ruling on the City's complaint "disingenuous in both belief and purpose[.]" It, therefore, found that Mr. Kostoff violated Rule 11 when he filed and prosecuted the motion for a temporary restraining order.

{¶22} The City attached a letter that it had received from Beck to its complaint. The letter explained that Beck intended to "immediately commence drilling" of the well once ODNR renewed its permit. Consistent with our determination that the City's action was not frivolous and, considering Beck's intention to proceed with drilling as soon as it received ODNR approval, we conclude that Mr. Kostoff had good grounds to move for a temporary restraining order. *See Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. Summit Nos. 24434, 24436, 2009-Ohio-5148, ¶ 25 (explaining that the question of whether an attorney "had good legal grounds to support a claim * * * is a question of law that we review *de novo*."). The City's second assignment of error is sustained.

ASSIGNMENT OF ERROR III

> BECAUSE IT FILED A MANDAMUS ACTION IN THE SUPREME COURT OF OHIO ON JUNE 19, 2015 REQUESTING A DETERMINATION OF ITS RIGHT TO DRILL THE SUNOCO WELL IN LIGHT OF THE SUPREME COURT'S DECISION IN *STATE EX REL. MORRISON V. BECK ENERGY*

*CORP.*, 143 OHIO ST.3D 371, 2015-OHIO-485, BECK ENERGY WAS ESTOPPED FROM SEEKING SANCTIONS UNDER CIV.R. 11 AND R.C. 2323.51 AGAINST THE CITY OF MUNROE FALLS AND ITS TRIAL ATTORNEY, ATTORNEY THOMAS KOSTOFF, FOR FILING A DECLARATORY JUDGMENT ACTION WHICH SOUGHT A SIMILAR DETERMINATION.

{¶23} The City's final argument is that Beck should be estopped from arguing that the City's conduct was frivolous because Beck filed a mandamus complaint with the Ohio Supreme Court that sought similar guidance. In light of this Court's resolution of the City's second assignment of error, we conclude that this issue is moot. We, therefore, decline to address it. App.R. 12(A)(1)(c).

### III.

{¶24} The City's second assignment of error is sustained. Its first assignment of error is overruled. Its third assignment of error is moot. The judgment of the Summit County Court of Common Pleas awarding sanctions to Beck is reversed.

Judgment reversed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ORVILLE L. REED and DAVID W. HILKERT, Attorneys at Law, for Appellants.

SCOTT M. ZURAKOWSKI, WILLIAM G. WILLIAMS, ALETHA M. CARVER, GREGORY W. WATTS, and JOSEPH J. PASQUERELLA, Attorneys at Law, for Appellee.