[Cite as *Payson v. Phipps*, 2022-Ohio-1525.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MIAMI COUNTY

| | | |
|---|---|---|
| FRANK M. PAYSON | : | |
| | : | |
| Plaintiff/Counterclaim Defendant-Appellant | : | Appellate Case No. 2021-CA-36 |
| | : | |
| | : | Trial Court Case No. 2019-CV-327 |
| v. | : | |
| | : | (Civil Appeal from |
| PRISCILLA ANN PHIPPS (SPIVEY) | : | Common Pleas Court) |
| | : | |
| Defendant/Counterclaim Plaintiff-Appellee | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 6th day of May, 2022.

. . . . . . . . . . .

ROBERT W. HOJNOSKI, Atty. Reg. No. 0070062, 525 Vine Street, Suite 1500, Cincinnati, Ohio 45202
    Attorney for Plaintiff/Counterclaim Defendant-Appellant

PRISCILLA ANN PHIPPS SPIVEY, 249 Briarcliff Road, Dayton, Ohio 45415
    Defendant/Counterclaim Plaintiff-Appellee, Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Frank Payson, appeals from a judgment granting R.C. 2323.51 sanctions against him and in favor of Defendant-Appellee, Priscilla Ann Phipps Spivey ("Spivey"). In his sole assignment of error, Payson contends that the trial court erred in granting sanctions and in the amount of sanctions awarded. For the reasons discussed below, we conclude that the assignment of error is without merit. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 2} This action arose from an attorney-client relationship between Payson and Spivey that began in July 2017 and ended in March 2018. After Spivey filed a disciplinary complaint regarding Payson with the Dayton Bar Association ("DBA"), a fee-dispute arbitration occurred on June 26, 2019. The arbitrators ordered Payson to give Spivey a refund of either $1,273.12 or $1,472.02, depending whether a prior check issued to Spivey in the amount of $198.09 was still negotiable. *See In the Matter of Fee Dispute Arbitration Between Priscilla Spivey and Frank Payson*, Montgomery C.P. No. 2020-CV-2210, 2019 WL 12382488 (July 9, 2019). *See also* Answer and Counterclaim (August 30, 2019), Ex. A.

{¶ 3} On August 9, 2019 (a month after the award), Payson filed a complaint against Spivey, alleging that she had committed defamation, defamation per se, and reckless and malicious conduct. No specifics about the alleged defamatory

circumstances or statements were included. In the complaint, Payson alleged compensatory damages in excess of $25,000 for each common law claim, for a minimum of $275,000, compensatory damages in excess of $25,000 for each tort claim, for a minimum of $275,000, and punitive and/or liquidated damages in an amount in excess of $25,000 on his tort claims, for a minimum of $275,000. He also asked for attorney fees and costs.

{¶ 4} On August 30, 2019, Spivey filed an answer which included various defenses, including that Payson had violated Civ.R. 11, and that any communications regarding Payson were confidential and privileged as they were made in the context of a disciplinary complaint. Spivey also included a counterclaim seeking payment of the arbitrator's award. In addition, Spivey asserted counterclaims for frivolous conduct and for violation of Civ.R. 11.

{¶ 5} On September 13, 2019, Spivey filed an amended answer and counterclaim. She then filed a notice of submission on September 16, 2019, indicating that she had served a first set of interrogatories and a first request for production of documents on Payson.

{¶ 6} On September 26, 2019, Payson filed a motion to dismiss the amended counterclaim, contending that the court lacked subject matter jurisdiction and that the counterclaim failed to state a claim. Payson also requested a temporary restraining order and preliminary injunction. Among other things, Payson alleged that Civ.R. 11 and R.C. 2323.51 claims must be made by motion rather than in a counterclaim. Motion to Dismiss (Sept. 26, 2019), p. 18-19. Additionally, Payson filed a motion to strike the

arbitration decision (which was attached to Spivey's original answer and counterclaim).

{¶ 7} Spivey filed a memorandum replying to the motion to dismiss; Payson then responded and included a second motion to strike. In this motion, Payson asked the court to strike documents and an affidavit that were attached to Spivey's memorandum. On November 15, 2019, Spivey filed a motion to compel Payson to respond to her discovery requests. Payson did not respond to the motion.

{¶ 8} On December 4, 2019, the trial court filed a decision overruling Payson's motion to dismiss and converting his motion into one for summary judgment. The court also overruled Payson's request for injunctive relief and attorney fees and overruled his motion to strike the arbitration decision. The court did grant Payson's second motion to strike, but only in minor part. The motion to strike was denied with respect to an affidavit Spivey had attached to her memorandum opposing the motion to dismiss. However, the court struck unanswered discovery requests attached to Spivey's memorandum, as the court felt these, being unanswered, could not supply evidence for or against summary judgment. Decision and Judgment Entry (Dec. 4, 2019), p. 10-11. As part of its decision, the court also set deadlines pertaining to the converted motion for summary judgment.

{¶ 9} On December 16, 2019, the court granted Spivey's motion to compel discovery and ordered Payson to pay reasonable attorney fees and costs that Spivey had incurred in obtaining the discovery order. As a result, on December 26, 2019, Spivey filed a document outlining the fees she had incurred in pursing the motion to compel. Payson did not respond to this filing.

{¶ 10} In its December 4, 2019 Decision, the court had ordered Payson to submit his Civ.R. 56(C) evidence on summary judgment within 30 days of the order. However, on December 31, 2019, Payson filed a motion seeking temporary suspension of the court's order; he also claimed not to have understood the court's decision. In the motion, Payson mentioned medical issues he had been experiencing. While awaiting the court's decision, Payson did not timely file any summary judgment materials.

{¶ 11} On January 21, 2020, the court gave Payson a 14-day extension (from that date) to file summary judgment materials. The court further stressed that its prior decision converting the motion to dismiss to summary judgment was not ambiguous.

{¶ 12} Payson did not file the summary judgment materials as ordered. Instead, he asked for an additional extension, claiming he did not timely receive the January 21, 2020 extension decision. The court then granted Payson another 14-day extension on February 14, 2020.

{¶ 13} Instead of complying with the court's December 16, 2019 order compelling discovery, Payson filed a Civ.R. 60(B)(3) motion on January 22, 2020, seeking to vacate the order. In the motion, Payson alleged fraud in that Spivey and her counsel had "deceived" the court into granting the motion to compel. This was based on the fact that Payson, while having an email address, did not choose to communicate by email. Payson therefore contended that Spivey's counsel had falsely represented to the court that Payson had been served with discovery requests. Spivey filed a response on January 29, 2020, noting that Payson had sent interrogatories to her counsel by email in this case in September 2019. Payson then filed a reply memorandum on February 17,

2020.

{¶ 14} On February 28, 2020, Payson filed a supplemental motion for summary judgment and included his own affidavit. The affidavit asserted for the first time that his defamation claim was not related to the fee dispute. No other facts were provided. In the motion, Payson made the same arguments as he had made before concerning the Civ.R. 11 and R.C. 2323.51 counterclaims. In response, Spivey noted that she was entitled to bring these claims. She also stated that even if the fee claims were premature, she intended to assert them in the case at a later date when the court permitted her to proceed. Payson filed a reply memorandum on March 11, 2020.

{¶ 15} On March 25, 2020, the trial court overruled Payson's Civ.R. 60(B)(3) motion to vacate. The court found that Payson's selective use of his email was unreasonable and also found no evidence of fraud. Furthermore, the court admonished Payson that his "leap to allegations of fraud, entrapment, trickery, lying, and illegality, are unacceptable and will not be tolerated." Decision and Judgment Overruling Plaintiff's Civ.R. 60(3)(B) Motion to Vacate (March 25, 2020), p. 9.

{¶ 16} On April 15, 2020, Spivey filed a motion asking the court to confirm the DBA arbitration award. Spivey attached a copy of the July 9, 2019 award.

{¶ 17} On April 22, 2022, the trial court granted Payson's summary judgment motion in part and overruled it in part. The court granted summary judgment as to Spivey's first cause of action (concerning the arbitration award). The court reasoned that the arbitration claim was not compulsory and that Civ.R. 13(A) (requiring assertion of compulsory counterclaims) did not control over R.C. Chap. 2711. Decision and Entry

Granting in Part and Overruling in Part Plaintiff's Supplemental Motion for Summary Judgment (Apr. 22, 2020) ("April 22, 2020 Decision"), p. 8. The court stressed that this failure was not Spivey's fault, due to the vagueness of Payson's defamation claims (which he had much later corrected by affidavit, indicating that they did not arise from the bar complaint). *Id.* at p. 7.[1] Nonetheless, because the arbitration claim was apparently not compulsory, the court concluded that summary judgment on this claim was required.

{¶ 18} The court then denied Payson's summary judgment motion on the rest of the counterclaims. The court noted that a split of authority existed concerning whether Civ.R. 11 and R.C. 2323.51 claims should be brought by motion or in counterclaims. *Id.* at 8-9. The court also stressed the lack of evidence from Payson (as opposed to legal conclusions) about his defamation claims against Spivey. *Id.* at 10-11.

{¶ 19} Although the court had already granted Payson's motion for summary judgment on the arbitration counterclaim, Payson filed a memorandum on April 29, 2020, opposing the motion to confirm the arbitration award. In this memorandum, Payson claimed, among other things, that he had been forced to arbitrate and that the arbitration

---

[1] As noted, Payson's affidavit, filed on February 28, 2020, still did not specify any details about the facts surrounding the defamation claims. At that point, Payson had still also not responded to Spivey's discovery requests. *See* Payson Affidavit attached to Payson's February 28, 2020 Supplemental Motion for Summary Judgment, indicating only that Spivey had "defamed the reputation and character of Payson, outside of the arbitration." *Id.* at ¶ 16. *See also* Spivey's March 4, 2020 Memorandum Contra Supplemental Motion for Summary Judgment, p. 4 (indicating that Payson had still not responded to discovery requests). In his March 11, 2020 response to Spivey's memorandum, Payson did not dispute that he had failed to provide discovery. Instead, Payson merely noted that he had a pending motion to vacate the order compelling discovery. Payson's Reply in Support of Supplemental Motion for Summary Judgment, p. 5. However, as noted, the trial court overruled Payson's motion to vacate shortly thereafter.

proceeding had been flawed. Payson then filed an answer to the counterclaims on May 11, 2020. He followed that with a May 21, 2021 motion to compel discovery.

{¶ 20} On May 21, 2020, Spivey filed a motion seeking summary judgment on all claims in the complaint. Spivey attached Payson's answers to discovery (which essentially answered no questions), as well as her own affidavit. On May 22, 2020, the court then filed an order refusing to confirm the arbitration award because no permissive counterclaim had been filed and the arbitration award was not related to the defamation action.[2]

{¶ 21} On May 25, 2020, Payson filed a motion to strike the summary judgment motion, and Spivey responded on June 3, 2020. Spivey also responded to Payson's May 21, 2021 motion to compel; she then filed a motion for a protective order on June 17, 2020, On June 18, 2020, Payson filed a Civ.R. 56(F) motion, seeking an extension of time to reply to the pending summary judgment motion.

{¶ 22} On July 2, 2020, the court filed an order awarding Spivey $331.50 in attorney fees incurred in connection with the motion to compel Payson's discovery. The court noted that Payson had not responded to the fee application. Order Awarding Defendant's Attorney Fees and Costs (July 2, 2020), p. 1. On the same day, the court filed an order resolving the Civ.R. 56(F) motion and the request for a protective order. The court allowed Payson to depose Spivey's parents and sister, but granted the protective order with respect to other individuals. The court also restricted questioning

---

[2] In hindsight, this may have been incorrect, since the court later said it did not believe Payson's statement that the defamation case was unrelated to the arbitration proceedings. However, Spivey did not file a cross-appeal, and the issue is not before us.

as to any issue other than the defamation claims. In addition, the court extended the discovery deadline for 45 days to allow the depositions to be taken. After Payson asked the court to reconsider this order, the court overruled his request and set a status conference for August 20, 2020.

{¶ 23} On July 28, 2020, the court granted Payson's motion to compel discovery in part. Most of his requests were overruled, but the court ordered Spivey to disclose a few items, like the address of her parents and some information about her social media accounts. The court also overruled Payson's request for attorney fees, since his counsel (retained for defense of the counterclaim only) did not sign the motion to compel, and Payson did not provide any payment agreement relative to the motion to compel. The court further found that Spivey's responses and objections to Payson's discovery requests were "substantially justified." Decision and Entry Granting in Part and Overruling in Part Payson's Motion to Compel (July 28, 2020), p. 15.

{¶ 24} On October 23, 2020, the court denied Payson's motion to strike Spivey's motion for summary judgment, finding that Spivey's motion had been properly filed and that Payson had not diligently sought discovery. Decision and Entry Denying Payson's Motion to Strike (Oct. 23, 2020), p. 4. After the court denied Payson's motion to strike, Payson filed a summary judgment response on December 22, 2020. Spivey then filed a reply on January 21, 2021.

{¶ 25} On February 10, 2021, the trial court granted summary judgment in Spivey's favor, granted Spivey's motion to strike part of Payson's affidavit, overruled Payson's motion to strike Spivey's reply memorandum, and overruled all other pending motions as

moot. The court further found that Spivey's counterclaims would serve as the motions required by R.C. 2323.51 and Civ.R. 11. Because a hearing was required on the requested sanctions, the court set a hearing for March 4, 2021. Decision and Entry Granting Defendant's Motion for Summary Judgment (Feb. 10, 2021) ("Feb. 10, 2021 Decision"), p. 17-18. The sanctions hearing ultimately occurred on September 10, 2021.

{¶ 26} The basis of the court's summary judgment decision was qualified immunity as to the defamation claims. The court observed that when Spivey filled her summary judgment motion on May 21, 2020, Payson still had not identified any defamatory statements, nor had he identified anyone to whom Spivey had made such statements. *Id.* at p. 11. The only admissible evidence that Payson presented, after nearly two years, was that Spivey had told her father that Payson had given her "bad information" about running an ad in a newspaper. *Id.* at p. 12-13. The court noted that the statement did not injure Payson in his profession because Spivey's father stated that this would have nothing to do with his decision on whether to hire Payson in the future. *Id.* at p. 15.

{¶ 27} The court further found a qualified privilege for statements made to family members and noted that Payson "had not identified any clear and convincing evidence to show a triable issue of actual malice, which would defeat the privilege." *Id.*

{¶ 28} On March 16, 2021, Payson filed a motion seeking Civ.R. 11 and R.C. 2323.51 sanctions against Spivey and her attorney for maintaining counterclaims against him. This was despite the fact that the trial court had previously rejected his position on the frivolous conduct and Civ.R. 11 counterclaims and had found no fault on Spivey's part for the arbitration counterclaim, due to the vagueness of Payson's defamation claims and

his delay in indicating they were unrelated to the arbitration dispute.[3]   On May 28, 2021, the court overruled Payson's motion for sanctions.

**{¶ 29}** The court held a hearing on Spivey's request for sanctions on September 10, 2021.   After the hearing, both sides filed briefs, and the court issued a decision on October 28, 2021, granting sanctions to Spivey pursuant to R.C. 2323.51, and denying sanctions under Civ.R. 11.    After eliminating certain amounts related to the counterclaims, items that were related to another case or were ambiguous, and block-billed entries that were not evidently related to the current case and were impossible to estimate as to reasonable time for the described tasks, the court awarded Spivey $27,633.45 of the $35,012.25 in fees requested, and other expenses of $1,509, for a total award of $29,142.45.

**{¶ 30}** Payson timely appealed and included in his notice of appeal the October 28, 2021 sanctions award; the February 21, 2021 decision granting summary judgment; and the April 28, 2020 judgment granting in part and overruling in part Payson's supplemental motion for summary judgment.   However, Payson's assignment of error only challenges the trial court's sanctions decision, not the summary judgment decision in Spivey's favor.


### III.   Error in Awarding Sanctions

**{¶ 31}** Payson's single assignment of error states that:

The Trial Court Erred in Awarding Sanctions Against Payson.

---

[3] The trial court did not find Payson's statement credible.

{¶ 32} Payson first argues that the trial court erred in holding a hearing or in taking any action under R.C. 2323.51 because Spivey raised the issue in a counterclaim and failed to file a written motion seeking sanctions pursuant to R.C. 2323.51(B)(1). Spivey filed a pro se brief and did not specifically address this point. As a result, Payson argues that we should accept his statement of facts and issues and reverse the trial court's decision. As authority, Payson cites App.R. 18. However, App.R. 18(C) refers to consequences that may be imposed where an appellee fails to file a brief. Because Spivey did file a brief, such consequences are inappropriate.

{¶ 33} Furthermore, the rule lets appellate courts "accept the appellant's statement of the facts and issues as correct and reverse the judgment *if appellant's brief reasonably appears to sustain such action.*" (Emphasis added.) Therefore, even in this situation, we are not required to find Payson's position meritorious, and we do not.

{¶ 34} R.C. 2323.51 allows courts to award sanctions for frivolous conduct. Here, the trial court awarded sanctions under R.C. 2323.51(A)(2)(i) and (ii). Oct. 28, 2021 Decision and Judgment Entry Granting Sanctions ("Oct. 28, 2021 Decision"), p. 10 and 13. Thus, as relevant to this case, frivolous conduct is defined as:

(a) Conduct of an inmate or other party to a civil action * * * or of the inmate's or other party's counsel of record that satisfies any of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

* * *

R.C. 2323.51(A)(2)(i)-(ii).

{¶ 35} Lower court decisions on sanctions are reviewed for abuse of discretion. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11. An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 36} However, in situations involving questions of law, our review is de novo. *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 2d Dist. Montgomery No. 28581, 2021-Ohio-3049, ¶ 168, citing *Namenyi v. Tomasello*, 2d Dist. Greene No. 2013-CA-75, 2014-Ohio-4509, ¶ 19-20. Because the first issue Payson raises involves questions of law, we will review his contentions de novo.

## A. Procedure for Raising Sanctions

{¶ 37} Payson's first challenge to the trial court's decision is that Spivey should have raised her fee request in a written motion rather than in a counterclaim. In this regard, R.C. 2323.51(B)(1) provides, in relevant part, that "at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal."

{¶ 38} The trial court initially overruled Payson's motion for summary judgment on the frivolous conduct counterclaims, noting that a split existed among Ohio courts concerning whether sanctions can be asserted in a counterclaim or must be asserted in a motion. April 22, 2020 Decision at p. 8-9. In its later entry granting summary judgment to Spivey, the court said that Spivey's counterclaims would be construed as a motion for sanctions. Feb. 10, 2021 Decision at p. 17-18. The court then treated them as such, held an evidentiary hearing, and awarded sanctions.

{¶ 39} "R.C. 2323.51, the 'frivolous conduct statute,' was enacted as part of Am.Sub.H.B. No. 327, which became effective October 20, 1987." *Sturm v. Sturm*, 63 Ohio St.3d 671, 672, 590 N.E.2d 1214 (1992). As originally enacted, R.C. 2323.51(B)(1) allowed courts to award reasonable attorney fees "at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment" to parties who had been "adversely affected by frivolous conduct." *See* 1987 H 327. Subsection (B)(2) further stated that trial courts may make an award "pursuant to division (B)(1) of

this section upon the motion of a party to a civil action." *Id.*

{¶ 40} Despite the fact that the statute specified a "motion," courts allowed parties to assert frivolous conduct in counterclaims. For example, in *Jones v. Billingham*, 105 Ohio App.3d 8, 12, 663 N.E.2d 657 (2d Dist.1995), the trial court had rejected a party's attempt to file a sanctions request after she had previously dismissed a counterclaim for frivolous conduct. On appeal, we affirmed, finding that the trial court had properly construed the counterclaim as "a frivolous claim within the ambit of Civ.R. 11 and R.C. 2323.51." *Id.* at 8.

{¶ 41} In 1996, amendments to R.C. 2323.51 expanded the frivolous conduct statute to civil actions and appeals by inmates and broadened the costs that might be recovered. *See* H.B. 455, 1996 Ohio Laws 209. At that time, language was added to R.C. 2323.51(B) to reflect the fact that appeals were included. As a result, R.C. 2323.51(B)(1) and (2) stated after amendment that:

> (B)(1) Subject to divisions (B)(2) and (3), (C), and (D) of this section, at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action or at any time prior to the hearing in an appeal of the type described in division (A)(1)(b) of this section that is filed by an inmate or within twenty-one days after the entry of judgment in an appeal of that nature, the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. The award may

be assessed as provided in division (B)(4) of this section.

(2) An award may be made pursuant to division (B)(1) of this section upon the motion of a party to a civil action or an appeal of the type described in that division * * *.

H.B. 455, 1996 Ohio Laws 209.

{¶ 42} In 1996, R.C. 2323.51 was again amended. The pertinent subsections remained essentially the same, but R.C. 2323.51(B)(2) now read that "[a]n award may be made pursuant to division (B)(1) of this section upon the motion of a party to a civil action or an appeal of the type described in that division or on the court's own initiative." H.B. 350, 1996 Ohio Laws 244. Thus, a third way to impose sanctions was added – on the court's own initiative. However, the entirety of this bill, including the amendments to R.C. 2323.51, was struck down as unconstitutional in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 462 and fn. 6, 715 N.E.2d 1062 (1999). This did not impact the 1996 amendments made in H.B. 455.

{¶ 43} After the H.B. 455 amendments, other Ohio appellate districts agreed with the position taken in *Jones*. *See Buettner v. Bader*, 6th Dist. Lucas No. L-97-1106, 1998 WL 30539, *2 (Jan. 9, 1998); *Texler v. Papesch*, 9th Dist. Summit No. 18977, 1998 WL 597870, *2-3 (Sept. 2, 1998); *Burrell v. Kassicieh*, 128 Ohio App.3d 226, 229, 714 N.E.2d 442 (3d Dist.1998*); and *Luchansky v. Jagnow*, 7th Dist. Mahoning No. 97 CA 191, 1998 WL 635871, *4-5 (Sept. 11, 1998) (affirming award of attorney fees, where appellees included R.C. 2323.51 claim as a counterclaim).

{¶ 44} These decisions were based on various factors, including that sanctions are

collateral matters over which a trial court retains jurisdiction even after a party has dismissed the allegedly offending claims. A further factor was the broadness of Civ.R 13(B), which allows a pleading to "state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Texler* at *2-3 (also relying on the prior authority in *Jones*, *Buettner*, and *Burrell*). Another reason underlying retention of limited jurisdiction to consider such claims was that otherwise, litigants could evade consequences for frivolous litigation by voluntarily dismissing their claims. *Burrell* at 229-230.

{¶ 45} In 2001, R.C. 2323.51 was again amended with the legislative purpose being: "1) to repeal the Tort Reform Act, Am. Sub. H.B. 350 of the 121st General Assembly, * * * in conformity with the Supreme Court of Ohio's decision in *State, ex rel. Ohio Academy of Trial Lawyers, v. Sheward* (1999), 86 Ohio St.3d 451; (2) to clarify the status of the law; and (3) to revive the law as it existed prior to the Tort Reform Act." S.B. 108, 2001 Ohio Laws 26. As part of these amendments, R.C. 2323.51 was "revived," and the content in R.C. 2323.51(B)(1) still allowed for courts to award fees for frivolous conduct at any time before judgment or within 21 days after judgment. *Id.* However, R.C. 2323.51(B)(2) was returned to the wording before H.B. 350, i.e., the language pertaining to awarding fees "on the court's own initiative" was omitted. *Id.*

{¶ 46} The final amendment of R.C. 2323.51 occurred in 2004, as part of an act intended, among other things, "to modify the provisions on frivolous conduct in filing civil actions." Am.Sub.S.B. 80, 2004 Ohio Laws 144. Under the amendments, the definition of "conduct" was broadened to encompass not only the filing of a civil action or assertion

of a claim in a civil action, but also "the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes." *Id.,* amending R.C. 2323.51(A)(1)(a). In addition, R.C. 2323.51(B)(1) and (2) were amended to their current form, which states as follows:

(B)(1) Subject to divisions (B)(2) and (3), (C), and (D) of this section and except as otherwise provided in division (E)(2)(b) of section 101.15 or division (I)(2)(b) of section 121.22 of the Revised Code, at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.

(2) An award may be made pursuant to division (B)(1) of this section upon the motion of a party to a civil action or an appeal of the type described in that division or on the court's own initiative * * *.

Am.Sub.S.B. 80, 2004 Ohio Laws 144.

**{¶ 47}** Thus, previously, the statute allowed a motion to be brought any time prior to commencement of trial or within 21 days after judgment. After amendment, the motion could be brought "at any time *not more than* thirty days after the entry of final judgment in a civil action or appeal." (Emphasis added.) Based on this wording, an outer limit for

filing was provided, but no limit was imposed on when the motion initially could be brought.

{¶ 48} In addition, a third avenue was again added to the two existing means of initiating an award ["upon motion in a civil action" or "on appeal of the type described in R.C. 2323.51(B)(1)"]. The third avenue was based "on the court's own initiative." This is consistent with the inherent power of courts " ' "to do all things necessary to the administration of justice and to protect their own powers and processes." ' " *Heard v. Meijer, Inc.*, 113 Ohio App.3d 224, 225, 680 N.E.2d 719 (2d Dist.1996), quoting *Ceol v. Zion Industries, Inc.*, 81 Ohio App.3d 286, 289, 610 N.E.2d 1076 (9th Dist.1992).

{¶ 49} After the 2004 amendments, Ohio appellate districts continued to find that frivolous conduct requests could be brought through counterclaims. *See Charlie Asmus Family Farm, Inc. v. Haskins*, 6th Dist. Wood No. WD-08-050, 2009-Ohio-5180, ¶ 20-29, citing *Jones,* 105 Ohio App.3d 8, 663 N.E.2d 657, and *Buettner*, 6th Dist. Lucas No. L-97-1106, 1998 WL 30539; *McKibben v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. Franklin No. 14AP-737, 2015-Ohio-1241, ¶ 19 (noting that "[w]hile defendants' counsel posited at oral argument that their counterclaims for sanctions and frivolous conduct were void ab initio because R.C. 2323.51 requires that such claims be brought by motion, we find authority to support that such claims may be brought by pleading without penalty"); *Craine v. ABM Servs., Inc.*, 11th Dist. Portage No. 2011-P-0028, 2011-Ohio-5710, ¶ 10; *State ex rel. Kostoff v. Beck Energy Corp.*, 2019-Ohio-1221, 134 N.E.3d 775, ¶ 6 (9th Dist.) (agreeing with its prior decision in *Texler*, 9th Dist. Summit No. 18977, 1998 WL 597870); *Scheel v. Rock Ohio Caesars Cleveland, L.L.C.*, 8th Dist. Cuyahoga No. 105037, 2017-Ohio-7174, ¶ 16; *Rose v. Cochran*, 4th Dist. Ross No. 14CA3445, 2014-

Ohio-4979, ¶ 34 (assuming without deciding that a request for sanctions in a summary judgment motion is sufficient to raise a claim for frivolous conduct); *Schaft v. Costick*, 5th Dist. Knox No. 2005-CA-02, 2005-Ohio-6700, ¶ 22 (assertion of frivolous conduct may be a compulsory counterclaim if the complaint itself is frivolous).[4]

{¶ 50} In *City of Cincinnati v. Triton Servs., Inc.*, 2019-Ohio-3108, 140 N.E.3d 1249 (1st Dist.), the First District Court of Appeals noted that:

> A split of authority exists as to the proper procedure to raise a claim of frivolous conduct. Some courts have held that a request for sanctions under R.C. 2323.51 must be made by motion after the trial and some have held that it may be made by counterclaim as well as by motion. *See Scheel v. Rock Ohio Caesars Cleveland, LLC*, 8th Dist. Cuyahoga No. 105037, 2017-Ohio-7174, ¶ 16; *Craine v. ABM Serv., Inc.*, 11th Dist. Portage No. 2011-P-0028, 2011-Ohio-5710, ¶ 10; *Shaver v. Wolske & Blue*, 138 Ohio

---

[4] The Tenth District has taken some seemingly inconsistent positions. *Compare Shaver v. Wolske & Blue*, 138 Ohio App.3d 653, 673, 742 N.E.2d 164 (10th Dist.2000) (trial court properly dismissed counterclaim because R.C. 2323.51 does not create independent cause of action and request for sanctions was premature), with *Bahgat v. Kissling*, 10th Dist. Franklin No. 17AP-641, 2018-Ohio-2317, ¶ 34 (noting the *Shaver* decision, but also concluding that in light of *McKibben*, 10th Dist. Franklin No. 14AP-737, 2015-Ohio-1241, there was no "obvious error of law warranting plain error review on appeal or an error of law or other defect on the face of the magistrate's decision which could arguably support reversal"). *See also Odita v. Phillips*, 10th Dist. Franklin No. 09AP-1172, 2010-Ohio-4321, ¶ 59 (noting that "Ohio courts have recognized that a claim for frivolous conduct under R.C. 2323.51 may be made by way of a counterclaim, rather than strictly by way of a motion"). Likewise, the Ninth District has been inconsistent, stating that R.C. 2323.51 does not create a separate cause of action. *Wochna v. Mancino*, 9th Dist. Medina No. 07CA0059-M, 2008-Ohio-996, ¶ 30. *Compare Kostoff*, 2019-Ohio-1221, 134 N.E.3d 775, at ¶ 6 (a counterclaim is an accepted method for asserting an attorney fee claim). However, in both *Shaver* and *Wochna,* the appellate courts also had reversed the trial court's judgment, meaning that imposition of sanctions could still be asserted on remand.

App.3d 653, 673, 742 N.E.2d 164 (10th Dist.2000).

*Id.* at ¶ 82.

{¶ **51**} In *Triton*, the defendant had raised a claim for frivolous conduct in a counterclaim. The trial court granted summary judgment on the issue because the request was premature, but said the defendant could raise the issue after trial. However, the defendant failed to do so, and then raised the issue on appeal. The First District declined to resolve the issue at that point, because the case was being reversed and remanded for a new trial. *Id.* at ¶ 79-85.

{¶ **52**} Subsequently, the First District Court of Appeals addressed the issue in *Vogel v. Albi*, 1st Dist. Hamilton No. C-190746, 2020-Ohio-5242. At that point, the court held that the statute was unambiguous and that "a motion for fees and costs under R.C. 2323.51(B)(1) based on another party's frivolous conduct must be raised by motion." *Id.* at ¶ 53. No appeal appears to have been taken from this decision, and the court did not certify a conflict with other Ohio decisions.

{¶ **53**} *Vogel* did not consider the legislative background of R.C. 2323.51; it simply stated that the statute was unambiguous and that "[i]f the General Assembly had intended for such an issue to be raised in a counterclaim, it could have so provided." *Vogel* at ¶ 53. This ignores the fact that while R.C. 2323.51(B)(2) called for a "motion" beginning with its enactment in 1987, Ohio courts have characterized the statute since at least 1995 as allowing for sanction requests to be asserted in counterclaims. Despite this fact, the legislature never changed the pertinent language during later amendments.

{¶ **54**} "It is presumed that the General Assembly is fully aware of any prior judicial

interpretation of an existing statute when enacting an amendment." *Clark v. Scarpelli*, 91 Ohio St.3d 271, 278, 744 N.E.2d 719 (2001), citing *State ex rel. Cty. Bd. of Ed. of Huron Cty. v. Howard*, 167 Ohio St. 93, 96, 146 N.E.2d 604 (1957). Because the legislature has never altered the reference to "motions" in R.C. 2323.51(B)(2), a very plausible argument can be made that the General Assembly chose to continue the accepted practice of using counterclaims as well as motions to assert frivolous conduct claims. In fact, the legislature even broadened the statute in 2004 to let courts award fees on their own initiative. In that situation, a motion or request would also not be involved.

{¶ 55} For purposes of deciding this case, however, we need not rely on the ability to pursue sanctions through a counterclaim. As noted, the trial court permitted the counterclaim to be converted into a motion. This was the approach followed in *Craine*, 11th Dist. Portage No. 2011-P-0028, 2011-Ohio-5710, and we think it was appropriate.

{¶ 56} In *Craine*, a defendant (ABM) appealed the trial court's conversion of its R.C. 2323.51 counterclaim into a motion for frivolous conduct. *Id.* at ¶ 1. The court had dismissed the counterclaim, but also said it would deem the counterclaim to be a motion and would set it for an evidentiary hearing at the proper time. In addition, the court included a Civ.R. 54(B) certification, allowing ABM to immediately appeal. *Id.* at ¶ 5.

{¶ 57} Although the Eleventh District Court of Appeals dismissed the appeal for lack of a final appealable order, it agreed with the trial court's procedure and made several observations that are pertinent. First, the court noted that while R.C. 2323.51 uses express language providing for attorney fee requests to be brought by motion, several

Ohio appellate districts had allowed these claims to be asserted in counterclaims. *Id.* at ¶ 10 (citing decisions from the Second, Third, Sixth, Eighth, and Ninth Appellate Districts). The court then said:

> Here, the trial court did not dismiss ABM's counterclaim outright; it simply changed the procedural device by which the issue would be raised from a counterclaim to a motion to conform to the express language of R.C. 2323.51(B)(2). Thus, ABM was not denied its right to request attorney fees for alleged frivolous conduct under R.C. 2323.51. While ABM may have been entitled to raise the issue by way of a counterclaim, it cannot be disputed that R.C. 2323.51(B)(2) expressly states that "[a]n award may be made * * * upon the *motion* of a party." (Emphasis added.) Thus, we perceive no error in the court's conversion of ABM's counterclaim into a motion.

*Id.* at ¶ 11.

**{¶ 58}** Furthermore, the court went on to stress that even if error occurred in converting the counterclaim, ABM's argument "would still lack merit because it has failed to demonstrate it was prejudiced by the court's ruling." *Id.* In this context, the court noted, "R.C. 2309.59 provides that '[i]f the reviewing court determines * * * that * * * substantial justice has been done to the party complaining * * *, all alleged errors or defects occurring [below] shall be deemed not prejudicial to the party complaining and shall be disregarded * * *.' " *Id.* at ¶ 13. Consistent with these remarks, the court emphasized that ABM "failed to demonstrate or even allege prejudice as a result of the

trial court's ruling." *Id.*

{¶ 59} The same observations apply here. Payson has not demonstrated or even suggested how he was prejudiced by the trial court's ruling. Payson was aware of the potential claim for sanctions since the very beginning of the litigation. The case then continued in the same vein for more than two years. In December 2019, the trial court had also specifically made its position clear when it overruled Payson's motion to dismiss the counterclaims.

{¶ 60} Furthermore, after the court stated in February 2021 that it would convert the counterclaims into a motion, it gave Payson ample notice of the hearing and an opportunity to present evidence, as required under R.C. 2323.51(B)(2)(a)-(c), which outlines notice procedures and an opportunity to be heard at a hearing. In fact, several months elapsed between the counterclaim conversion and the evidentiary hearing. Finally, both Payson and his own attorney fee expert testified at the hearing. Given these facts, we find no possible prejudice.

{¶ 61} As a final point in this context, we note that Payson has also relied on *Bloom v. Bloom*, 11th Dist. Trumbull No. 2019-T-0078, 2020-Ohio-4107. *See* Appellant's Brief, p. 8, and Appellant's Reply Brief, p. 3. In *Bloom*, the court of appeals found that a frivolous conduct claim was not before the trial court because it was not made in a proper written motion. *Id.* at ¶ 92. Specifically, the party opposing a Civ.R. 60(A) motion for relief from judgment simply inserted a sentence on the last page of a post-hearing brief. At that point, the party only stated that fees should be awarded because the Civ.R. 60(A) motion was frivolous. The party bringing the motion for relief did not respond in his brief,

and the trial court did not mention this issue in its entry denying the Civ.R. 60(A) motion. *Id.* at ¶ 89-91.

**{¶ 62}** The facts in *Bloom* are significantly different, as it did not involve either a written motion or a written counterclaim. Here, Spivey's attorney fee claims were asserted in a written counterclaim and were converted to a motion. More importantly, Payson has failed to demonstrate how he was prejudiced. Accordingly, we reject Payson's challenges to the procedure the trial court used (mislabeled in his brief as issues "7, 8, 9, and 10").[5]

### B. Alleged Error in Sanctions Award

**{¶ 63}** The final two issues that Payson raises (labeled as "11" and "12" in his initial brief) involve the trial court's alleged error in finding that Payson had violated R.C. 2323.51 and in awarding an excessive amount. We will consider these issues together.

**{¶ 64}** According to Payson, the trial court improperly held a sanctions hearing without making a threshold determination of whether any conduct was frivolous. However, Payson fails to cite any authority for this claim.

**{¶ 65}** Courts do not need to make threshold findings before holding sanctions hearings. Instead, R.C. 2323.51(B)(2) only requires courts to take certain actions before awarding sanctions. These include: (1) setting "a date for a hearing to be conducted in accordance with division (B)(2)(c) * * * to determine whether particular conduct was

---

[5] We say "mislabeled" because Payson's initial brief does not contain issues "1" through "6." Instead, the issues are labeled "7" through "12." The reply brief refers to the same issues as "a" though "f" rather than as numbers. *Compare* Appellant's Brief at p. 6 with Appellant's Reply Brief at p. 3.

frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award"; (2) giving notice of the hearing to each party or counsel who allegedly engaged in frivolous conduct; and (3) conducting the hearing and allowing parties and counsel to present evidence. R.C. 2323.51(B)(2)(a)-(c). The trial court complied with these requirements.

**{¶ 66}** Payson also argues that Spivey failed to meet her burden because she never specified which conduct violated R.C. 2323.51 and did not specify particular pleadings that were frivolous. Instead, Spivey generally alleged that everything Payson did was frivolous. Payson further contends that Spivey could have ended the litigation sooner by moving to dismiss his complaint or to stay discovery rather than filing counterclaims. In addition, Payson argues that Spivey should not recover fees associated with her counterclaims.

**{¶ 67}** We review lower court decisions on sanctions for abuse of discretion. *Striker*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, at ¶ 11. However, reviewing factual decisions "involves some degree of deference, and we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support them." *Shields v. Englewood*, 172 Ohio App.3d 620, 2007-Ohio-3165, 876 N.E.2d 972, ¶ 54 (2d Dist.), citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 52, 673 N.E.2d 628 (10th Dist.1996).

**{¶ 68}** In contrast, " 'whether a pleading or argument is warranted under existing law or can be supported by a good faith argument for an extension, modification, or reversal of existing law is a question of law, peculiarly within the competence of an

appellate court; therefore, we will review this question de novo, without deference to the trial court's decision.' " *Natl. Check Bur. v. Patel*, 2d Dist. Montgomery No. 21051, 2005-Ohio-6679, ¶ 10, quoting *Passmore v. Greene Cty. Bd. of Elections*, 74 Ohio App.3d 707, 712, 600 N.E.2d 309 (2d Dist.1991). "The ultimate decision whether to impose sanctions for frivolous conduct, however, remains wholly within the trial court's discretion." *Orbit Elecs., Inc. v. Helm Instrument Co.*, 167 Ohio App.3d 301, 2006-Ohio-2317, 855 N.E.2d 91, ¶ 47 (8th Dist.).

{¶ 69} Furthermore, " 'R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed for frivolous conduct.' " *Striker* at ¶ 21, quoting *Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 2008-Ohio-3948, 896 N.E.2d 191, ¶ 8 (10th Dist.). *Accord Horenstein*, 2021-Ohio-3049, 178 N.E.3d 71, at ¶ 192.

{¶ 70} The trial court's decision awarding sanctions against Payson was very detailed. *See* Oct. 28, 2021 Decision at p. 1-24. After reviewing the record, the court found that Payson had filed the defamation action against Spivey in retaliation for her DBA ethics complaint and that Payson's conduct during the litigation had increased Spivey's litigation costs. *Id.* at p. 10-11. The court also said it did not find Payson's testimony credible. *Id.* at p. 11 (referring to inconsistent affidavits Payson had filed, as well as statements he made during an August 7, 2020 status conference).

{¶ 71} In addition, the court described Payson's attempts to impede discovery throughout the case, which caused Spivey to file a motion to compel, delayed discovery, and involved Payson's refusal to accept email and his claim that he did not communicate by email (despite evidence that he did). *Id.* at p. 11-13.

**{¶ 72}** The court further found that Payson's defamation claim was unsupported by law. In this regard, the court noted that when Payson filed the defamation complaint, he did not have any facts to support a claim that Spivey had made a false statement; instead, Payson relied on speculation and conjecture. *Id.* at p. 13-14. The court concluded that Payson's conduct, as a lawyer who had practiced for 30 years, failed to satisfy a reasonableness standard, which tests " 'whether no reasonable lawyer would have brought the action in light of the existing law.' " Oct. 28, 2021 Decision at p. 14-15, quoting *Stafford*, 177 Ohio App.3d 799, 2008-Ohio-3948, 896 N.E.2d 191, at ¶ 6.

**{¶ 73}** We have reviewed the entire record, including the pleadings, transcripts of the evidentiary hearing and status conferences, and exhibits presented to the trial court. Our review reveals that the trial court did not abuse its discretion in awarding fees to Spivey and that the court's decision was supported by competent, credible evidence. Moreover, the court correctly concluded that no reasonable lawyer would have asserted claims for defamation against Spivey in light of existing law.

**{¶ 74}** "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.' " *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995). "To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement

was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996).

{¶ 75} Our review of the record reveals, without doubt, that when the complaint was filed, Payson lacked any facts to support his claim that Spivey had made false statements about him and had injured his reputation. The complaint itself was extremely vague, stating only that that Spivey had made untrue, defamatory statements about Payson. Complaint (Aug. 9, 2019), ¶ 6, 9, 12, and 17. Almost immediately after answering the complaint, Spivey submitted discovery requests to Payson, seeking information about the content of the alleged defamatory statements. Rather than responding, Payson embarked on a course of unfounded motions and attempts to evade discovery, as noted in the Statement of Facts in this opinion.

{¶ 76} In detailing the factual background of this case, we actually did not include quite a few unsuccessful motions that Payson filed. As Spivey's expert witness noted at the sanctions hearing, there were "39 procedural motions and another seven discovery type motions * * *. This required a lot of paperwork. * * * The vast majority of the initial filings of that were made by *pro se* Plaintiff's attorney [Payson]." Transcript of Sanctions Hearing ("Tr."), p. 24-25. It is also apparent that very late in the litigation, Payson was still searching for facts supporting his claim (which he never found). Accordingly, the trial court did not err in finding that no reasonable lawyer would have filed the defamation

claim.

{¶ 77} Payson argues that he brought the defamation action because he had a "good faith belief that Spivey would make materially false statements to others with the intent of damaging his professional reputation." Appellant's Brief at p. 11. The trial court found otherwise, stating that:

> Presumably, Payson, after practicing for thirty years would have brought a claim for defamation only upon some evidence of a defamatory statement. Here, as Payson testified to, the complaint was brought because he "knew" Spivey "would" say something about him to her family and friends. This testimony does not satisfy the reasonable standard required.

Oct. 28, 2021 Decision at p. 15. We agree with the trial court.[6]

{¶ 78} The court's second finding in connection with frivolous conduct was made under R.C. 2323.51(A)(2)(a)(i), which concerns conduct that "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation."

{¶ 79} In view of the history we outlined above, the trial court's decision that Payson engaged in such frivolous conduct was supported by competent, credible

---

[6] We note that the trial court did deny Spivey's Civ.R. 11 claim. The court found that while Payson's conduct was frivolous, the subjective standard for Civ.R. 11 "saved" Payson from a finding that he acted with "subjective moral obliquity or a conscious doing of wrong." Oct. 28, 2021 Decision at p. 17. This issue was close, and a different finding could have been made. However, the trial court appears to have credited Payson for medical issues that, in the court's words, "perhaps" were "a contributing factor to his procedural conduct throughout the case." *Id.*

evidence. Notably, the trial court specifically found that Payson was not credible. We give substantial deference to trial court decisions on credibility, since "[c]redibility of witnesses and the weight to be given their testimony are primarily matters for triers of facts to resolve." *Buckeye Retirement Co., LLC v. Busch*, 2017-Ohio-4009, 82 N.E.3d 66, ¶ 55 (2d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). This degree of weight is proper because factfinders have the chance to see and hear witnesses and are in the best position to judge credibility. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 80} As noted, Payson's complaint lacked any details about the false statements Spivey was alleged to have made. When litigation began, Spivey assumed Payson's action was filed in retaliation for her DBA complaint, which was resolved in her favor only a month before Payson filed suit. Payson never properly responded to discovery, filed many pleadings to delay responding, and then, months into the litigation, asserted that the defamation claims were related to matters outside the DBA arbitration. However, Payson did not provide any details even then concerning the basis for his claims. The subsequent course of the litigation also clearly shows that Payson lacked facts to support his claims. Given these circumstances, the court's finding that Payson lacked credibility and that he filed litigation to retaliate against Spivey was supported by competent, credible evidence.

{¶ 81} As a final matter, Payson argues that Spivey's fees should have been reduced significantly. According to Payson, Spivey targeted him for fees from the beginning and litigated inefficiently. As noted, Payson also claims that the court should

not have considered any fees relating to Spivey's improperly filed counterclaim. In addition, Payson complains that Spivey incurred almost $10,000 in fees after defeating his claims on summary judgment.

{¶ 82} A "party seeking sanctions under R.C. 2323.51 bears the burden of establishing the costs incurred in connection with the frivolous conduct and reasonable attorney fees that it incurred." *Foland v. Englewood*, 2d Dist. Montgomery No. 22940, 2010-Ohio-1905, ¶ 66, citing *In re Verbeck's Estate*, 173 Ohio St. 557, 559, 184 N.E.2d 384 (1962).

{¶ 83} At the sanctions hearing, the propriety of a $195 hourly charge for attorney fees was not disputed. Tr. at p. 14, 15, and 24. According to the evidence at the hearing, Spivey's attorney, David Beitzel, had performed 267.52 total hours of work on the case (totaling $52,166.40) but had billed Spivey only for 169.50 hours (totaling $33,052.50). *Id.* at p. 13-14. There was also work in progress, including the hearing itself, which had not yet been billed. *Id.* at p. 9 and Defendant's Ex. F.

{¶ 84} After reviewing the fee statements, including the work-in-progress statement, and after adding 2.8 hours for the sanctions hearing, the trial court found that Spivey claimed 179.55 total hours of legal work, or $35,012.25. Oct. 28, 2021 Decision at p. 20. The court reduced this amount by 37.84 hours and arrived at a lodestar amount of $27,633.45. *Id.* at p. 23. The court also added expenses totaling $1,509, for a total sanctions award of $29,142.45. *Id.* at p. 24.

{¶ 85} In calculating fees, the trial court used the well-known formula from *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), *as modified by Phoenix*

*Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.,* 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30.  In *Phoenix Lighting*, the court noted that:

> There is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the "lodestar," is the proper amount for an attorney-fee award. Enhancements to the lodestar should be granted rarely and are appropriate when an attorney produces objective and specific evidence that an enhancement of the lodestar is necessary to account for a factor not already subsumed in the lodestar calculation

*Phoenix Lighting* at paragraph one of the syllabus.  The trial court did not make any enhancements to the lodestar, so that is not an issue here.

**{¶ 86}** Review of trial court decisions on attorney fees is for abuse of discretion. *Bittner* at 146.  In this regard, the Supreme Court of Ohio has stressed that " '[i]t is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court.  Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere.  The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.' "  *Id.*, quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (12th Dist.1985).

**{¶ 87}** The court also said in *Bittner* that where "the claims can be separated into

a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Id.* at 145. This was done here, as the trial court eliminated all fees related to Spivey's counterclaims. Oct. 28, 2021 Decision at p. 19. The court also deducted fees related to an attempt to enforce the arbitration award in another court; fees that were ambiguous as to which case they referenced; fees that related to Spivey's prior motion to compel; and fees that were "block-billed," unless they were evidently related to the current case and could be estimated as reasonably related to the time expended. *Id.* at p. 20.[7]

{¶ 88} Thus, contrary to Payson's claims, the trial court did not improperly bill for fees related to the counterclaims. Furthermore, our review of the record reveals that the trial court did not abuse its discretion in awarding the remainder of the fees that Spivey requested. The court was very familiar with the scope of the litigation, which was exponentially increased by Payson's many motions, most of which were rejected as unfounded, with a few minor exceptions. Moreover, when the trial court made decisions, Payson refused to accept them and asked the court to explain, reconsider, or vacate its own decisions. In these situations, Spivey had to file additional paperwork.

{¶ 89} As noted, before the 2004 amendments, R.C. 2323.51 specifically allowed motions for sanctions to be brought prior to commencement of trial or within 21 days after

---

[7] "Block billing" refers to " 'lumping multiple tasks into a single time entry.' " *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 6, quoting *Tridico v. Dist. of Columbia*, 235 F.Supp.3d 100, 109 (D.D.C.2017). With respect to fee applications submitted to its own court, the Supreme Court of Ohio has disapproved of block billing. *Id.* at ¶ 7.

judgment. In that context, our court noted that:

> In deciding if fees should be awarded, a court might, by necessity, have to consider activity in the case from its origin, since the fee award is designed to compensate an aggrieved party for expenses involved in responding to improper actions. These improper actions could have taken place from the very beginning of the case, and a fee award could encompass these actions, even if the motion for fees were not made until later in the case. In fact, the statute authorizes the fee request at any point, even after judgment.

*Surface v. Grottlla-Kennedy*, 2d Dist. Clark No. 2002-CA-80, 2003-Ohio-3978, ¶ 17, citing R.C. 2323.51(B)(1).

{¶ 90} In light of the fact that the frivolous conduct here involved the very initiation of the defamation action, the trial court did not abuse its discretion in considering activity that occurred throughout the case.

{¶ 91} As a final point, Spivey did not incur almost $10,000 in fees and expenses related to this case after obtaining summary judgment in February 2021. We have reviewed the billings and the amount was significantly less than that. For example, from March 3, 2021 through March 25, 2021, Beitzel invoiced Spivey for $1,310.45 in fees. However, of that amount, $565.50 related to another case being handled for Spivey, and the trial court deducted those billings. *See* Oct. 28, 2021 Decision at p. 23 and Defendant's Ex. B. Similarly, of the $1,150 invoiced for March 31, 2021 through April 30, 2021, $296.40 was attributable to another case and a duplicate entry, and the court

deducted these amounts as well.   *Id.*

{¶ 92} Moreover, even after summary judgment had been awarded against Payson, he continued to file motions, including a motion seeking frivolous conduct sanctions against Spivey, which was overruled.[8]   Spivey's counsel also had to file another motion to compel discovery from Payson, attend a status conference in May 2021, prepare for an evidentiary hearing, consult with an expert, attend the hearing, and prepare a post-hearing brief.   All of these matters caused additional expense, and there does not appear to have been any attempt to run up expenses.   In fact, Spivey's counsel did not charge for considerable amounts of time.   Again, as an example, from March 3, 2021 through March 25, 2021, there was no charge for 6.8 hours of counsel's time, or about $1,326.

{¶ 93} Based on the preceding discussion, the trial court did not err in awarding sanctions against Payson, nor did it award an excessive amount.   Accordingly, Payson's sole assignment of error is overruled.

### III.   Conclusion

{¶ 94} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.

---

[8] Of the $1,150 billed between March 31, 2021 and April 30, 2021, at least $664.95 appears to have been expended for legal research and in replying to Payson's motion seeking frivolous conduct sanctions against Spivey.   *See* Defendant's Ex. B.   Again, the trial court found this motion without merit.   In particular, the motion concerned arguments of Payson that the court had repeatedly rejected.

Copies sent to:

Robert W. Hojnoski
Priscilla Spivey
Hon. Stacy M. Wall